BAKER v. WELCH.

1. The grantor of a deed, attacked for fráud, may give evidence to sustain it—former opinion on this case overruled.
2. To impeach a voluntary conveyance as fraudulent, it must be shown that the grantor was largely indebted at the time conveyance was made.

Statement of the case made, and opinion delivered by McGIRK Judge.

Jacob Baker brought suit in chancery against John Welch. The bill charges, that in the year 1814, John Welch, the father of the defendant, became indebted to Baker in a large sum of money, about the sum of twelve hundred and seventy dollars, for which Welch gave to him to secure the payment, three several notes, payable a few days after date.

John Welch, sen. died intestate in 1829 or 1830, and one Wolfskill became administrator on his effects. In Nov. 1830, the complainant obtained from the county court of Clay county an allowance of his debt against the effects of Welch deceased, in the hands of the administrator: that this allowance remained unpaid for want of assets. That Welch died possessed of large property and that large debts were owing to him, and among them a debt was due at the time of his death from one Richard Gentry of Boone county, for about the sum of $1200, which was secured by a mortgage on a lot in the town of Columbia; and that after the death of the intestate the defendant Welch, without any lawful right, collected the said debt of Gentry, together with the interest thereon, and appropriated the same to his use, pretending the mortgage was in his name and to his use. The bill charges that if said mortgage was executed to the defendant Welch, he paid nothing for it, and that it was done to defraud the creditors of Welch senr. The bill charges that at the time the mortgage was made the intestate was largely indebted; and that complainant's debt was due and owing to him before and at the time the mortgage was made &c. The bill prays that Welch the defendant may be compelled to discover &c. and that he may be compelled also to pay the debt of the complainant &c.

The defendant by his answer admits that his father died as stated in the bill; he admits that the intestate died possessed of large personal property; he denies that the complainant had any such debts due to him from the in-

testate as set up by the bill, and calls for strict proof on that point; he says he does not know that his father ever had any such debt due from Gentry as alleged, and denies that he ever collected any debt due to the intestate, or had any of his effects after his death.   The amended bill charges that sometime before the death of the intestate, Richard Gentry was justly indebted to him in the sum of $1000.   That on settlement the intestate requested Gentry to execute a note for the same to the defendant, who is the son of the intestate, and that the intestate also requested Gentry to execute a mortgage on a lot of land to secure the payment to the defendant, which Gentry did.   The bill charges that the defendant had no right to the money in any way, and that these writings were procured by the intestate with the intention and for the purpose of defeating his creditors; that the intestate was at the time largely indebted, among which debts were those of the complainant—and, the amended bill also charges that the notes were in trust for the intestate.   That on the death of the father, the son collected the money of Gentry; and that the debt of the complainant was due, and while many others were due, the intestate without any valuable consideration conveyed to the defendant large amounts of money, goods, and lands, to defeat his creditors; and that the son still holds the same, in prejudice of the creditors of the deceased.   To this amended bill, the defendant answers, and says that before the death of his father, Richard Gentry was indebted to the intestate in about $1000, and that the intestate procured Gentry to execute several notes to this defendant payable at different times; and to secure the payment of all the money, the intestate procured Gentry to make a mortgage to the defendant on two lots in Columbia.   The defendant then charges the fact to be, that at the time of making the notes and mortgage his father was largely indebted to him: that is to say, in the sum of $400, for a negro woman which he let his father have in 1822 or '23, and that the father was also indebted to him in the sum of $400, for a crop of corn made by the defendant and sold to the father at the Council Bluffs, in the year 1824; and in the farther sum of $200, money loaned by the defendant to his father in 1824, and that the Gentry debt was passed to him to pay said several debts.   The answer admits the defendant has collected the same.

This answer insists on the former answer being made a part of the new answer.   The answer further alleged

that in the year 1823, the defendant received of his father, when he was perfectly solvent, a negro woman by way of advancement. The defendant farther says he has been informed, and believes the complainant's debt has long since been paid. A replication was filed, the cause was heard on bill, answer exhibits and depositions. The complainant gave in evidence the record of the county court of Clay county, amounting to about $1200, but gave no other evidence as to the existence of his debt. On the hearing the defendant gave in evidence the deposition of his mother, Elizabeth Welch, who proved that about the year 1824, John Welch senior, contracted with the defendant and one Balnore to raise a crop of corn at the Council Bluffs for him, for which the father agreed to give them whatever the crop of corn would bring; and that the intestate received the whole crop raised by both, which was estimated by him and Balnore and the defendant to be eight hundred bushels, and was sold by the intestate at the Council Bluffs at one dollar per bushel. That the intestate settled with Balnore for his part, and gave him therefor a negro woman and child; and that the intestate never, to the knowledge of the witness, paid the defendant any thing; and witness, in the lifetime of the intestate, heard him say he had transferred to young Welch the Gentry debt, in payment of the corn debt and other debts. The witness also swore, that she knew Welch the father owed the defendant $200 for borrowed money, and $400 for a negro woman. The plaintiff proved by one John Balnore, that he (Balnore) become acquainted with John Welch the defendant in 1822; that he was then about 18 years of age. That the intestate and the defendant lived at the Council Bluffs, and in 1823 they left there. That the son had no farm of his own—worked with the witness and the intestate's other hands in the crop sometimes, and at other times helped to butcher. Says the defendant had a couple of horses, and had no other property known to witness—thinks that in 1823 or '24, the defendant bought of one Fry a horse, for $110, and the father sent the witness to tell Fry he had better take the horse back, as the defendant had no cattle and was under age; and that intestate would not pay the debt for his son. Witness knows the defendant had a negro boy which his father gave him when he got married, and knows of no other property;—he heard and knows nothing of the defendant owning a negro girl about that time. Witness does not know the defendant had any interest

in the crop. The witness sold the corn and delivered the proceeds to the father. Witness farther says, that about a year after the death of the intestate, he had a conversation with the defendant in regard to the Gentry debt, in which the witness advised the defendant to keep the debt, as he suspected Wolfskill did not intend to do what was right. The defendant said he intended to give it up to Wolfskill, as he did not think it justly belonged to him.

One Baxter says, in the summer of 1825, he supposes the defendant was about 20 or 21 years of age; he did not know of him having any property of consequence— at that time defendant was going to school. Another witness was examined as to the amount of the intestate's property in or about the years 1824 and 1825, which appeared to be of the value of several thousand dollars.— Upon this evidence, the court dismissed the bill, and the complainant now seeks to reverse that decree.

*J. Wilson,* for appellant—

The question is upon the competency of Mrs. Welch's deposition, who is the mother of the defendant, and who at the date of the transactions of which she speaks, was the wife of the said John Welch senior, who was a participant in the fraud charged upon the defendant. It is administered that, if in this proceeding, John Welch sen. would be a necessary party to this bill then, that she cannot be a witness now. That he would have been a necessary party if alive, is most clear to me; and I very much doubted when the suit was brought by Messrs. Rees and Atchinson, whether the administrator ought not to have been a party; and the reason why he was not made a party, was in consequence of the fact which we alleged in the bill as an excuse—was that he had fully admitted and finally settled the assets which come to his hands, and nothing was left for us; and this excuse was given in the bill in consequence of the authorities now cited. See Maddox 178, 192, 193; Cooper,s Equity, 35. These authorities most clearly show a right in such a case as this to fail to make the administrator a party; but for this I hold that Wolfskill, the admr. of John Welch senr. ought to have been a party. That John Welch senr. if alive, most indubitably must have been a party. In the 1st place, it is a general rule that all persons interested in the subject matter of the suit—see 2 Maddox 179, 180—see Cooper's Eq. 33, this is clearly the general rule, subject however to some exceptions. Now, that

John Welch senr. if alive, is interested in the subject of this suit, cannot, it seems to me, be disputed. It is laid down, 1 J. C. Reports, 339, and 2 J. C. Repts. 394, that assignees of an insolvent must be made parties as well as himself, although in that case first cited, his assignees had resigned to the insolvent; and from all the reasoning in the books, in relation to parties to a suit, it is clear that John Welch senr. ought to be a party: he ought to be brought into court for the purpose of enabling the defendant John Welch to disprove the existence of the debt, or that it was paid if ever it existed. John Welch junr. may have been ignorant of the facts in relation to the creation or the discharge of the plaintiff's debt. In reason he ought to be brought before the court to assist John junr. in showing there was no debt. Suppose John Welsh, senr., had never signed the bond, or that he was an infant, or that he delivered it as an escrow, or by duress, or that it was since paid off, although it may be within the power of the deft., John Welsh, junr., to set up these defences, (yet this is doubted in particular, as to infancy the right to plead, that is laid down to be personal) yet it cannot be supposed, that John junr. could be as well informed and provided with facts to prove these defences as John Welch senr., and therefore, the Court would, most assuredly, require him to be a party and would require of the pltf. to bring him for that purpose. There is another and clear reason why John Welch sen. should be a party, it is this: the conveyance of the Gentry debt is shown to be voluntary and to have been made by a father, who was indebted at the time to a son, this is always looked upon as a fraud on his creditors, see Maddox 275, 274, and so we have a right to go against the property to pay our debt, but yet we have no right to disturb this conveyance, if the father is able to pay it himself, nor to take any more of it than will make up the deficiency that the old man may be unable to pay. See Maddox 280, (side paging) of course the old man ought to be before the Court to see how far he is unable to pay. In the cases in 2 J. C. Reports, 283, 4 Johnson's, C Reports, 671, 682, 687, all cases of creditors filing bills to set aside fraudulent and voluntary assignments of property by a debtor, and in all those cases the debtor is made a party, which shows clearly that in Chancelor Kent's court it was considered necessary. If there was time allowed, I could advance many more reasons and, as I believe, authorities in support of this position. In 4 J. C. Reports, 116, it is laid down

by Kent that a co-admr., who was charged with a fraud in embezzling assets and not accounting, ought to be made a party and that too where the fraudulent conduct of the one not made a party, appeared only by the plea of the other made a party. If Mr. Leonard says any thing about the case being sent back, upon the ground that there is no evidence to show a debt (which I believe he is not to do) as it was upon the competency of Mrs. W. testimony, that he wished to file his motion. If that should be questioned, I can show from authority, that when a matter, laid in the bill as being within the knowledge of the defedant, he must answer it specifically and not *generally*, if he does *the latter* the specific allegation is taken at the hearing as true; this has often been decided in Kentucky, New York and in the U. S. Supreme Court. Now see 3 Bibb, 466, 539, 1 Bibb, 175, taken from 2 Pyrtle, 260, 3 Monroe, 187, 2 Bibb, 69, taken from 2 Pyrtle, 258, 3 Marshal, 6, upon looking into the bills and answers of this case, it will be seen that there is a specific charge of the debt, in the first bill it is not charged as being within the defts. knowledge, but in the second it is. Now in his first answer (as I believe, for I now have not the answer before me) he only makes a general vague denial, but in his second answer he does not pretend to deny that there once existed a debt, (except by setting up his first answer) but contends that it was paid. Now if the debt once *existed,* (I maintain he does not deny it) then the bill ought not to be dismissed, and what he says about the payment of the debt in the second answer, is inconsistent with the idea that Mr. Leonard wished to make out that there was no debt at all, for the court will perceive that an answer is not evidence unless it is responsive to the bill. Now we did not allege that it was paid, but that the debt was created by the execution of the bond, giving day and date, and which we allege was known to the defendant; then he tells us that it has been paid, this is affirmative on his part, and requires proof from him, but at the same time this very answer is based upon the truth of our allegation that the debt once existed. Then in setting up the 1st answer, in 2d must be understood as an abandonment of even the general denial of the original existance of the debt, which in the first answer would have been entirely insufficient if, as in the amended bill, it had been alleged in the original bill, that the defendant knew of original existence of the debt. See 1 J. C. R. 103, Woods, vs. Morall, 302, 3 J. C. R. 297, 5 J. C. R. 247; see same 245, when like the

present case John, junr., must raise at the hearing by proof of the presumption of payment.

*Leonard,* for appellee, relied on the following points and authorities:

First point.—After the hearing of a cause is commenced, a party cannot demand as a matter of right, that issues of fact be made up and tried by jury.—Rev. Laws of 24 and 25. Title, "Practice in chancery," sec. 26.

Second point.—A party cannot, as a matter of right, examine witnesses orally upon the hearing, after an order in the cause that the testimony be taken in writings.— Rev. Laws of 1825. Tit. "Pracice in chancery," sec. 27; and if any such right exist, the refusal of the court to allow it to be exercised in the present instance, could not have prejudiced the complainant, as he expressly proposed to prove, orally, the same facts, and no other, that were already in proof by the deposition of the witness he proposed to examine.

Third point.—The first interogatory to defendants. Witness [Mrs. Welch] is not leading. 1 Stark. Ev. 123, 124, Nicholls vs. Dowding; 1 Stark. N. P. cases, 81, cited in note to 1 Stark. Ev. 123, 124: and if it be there was no previous motion to suppress the answer for that cause, and therefore the objection upon the hearing was properly overruled.

Fourth point.—Mrs. Welch (the grantors' widow) is a competent witness for the defendant. 1st. She is not disqualified by interest, 2 Stark. Ev. 746, (side page) Bent vs. Baker, 3 Term Reports 32, Paul vs. Brown, 6 Esp. Cas. 24, (cited in note (o) to 2 Stark. Ev. 770 (side page) Foster vs. Wallace 2 Mo. Reports, 236, 239. 2d. Nor excluded by the policy of the law, founded on the relation of husband and wife. There are three classes of cases to which the rule of exclusion, founded on this relation, is applicable, 2 Stark. Ev. 707, (side page.)

1st. Where the husband or wife is a party to the proceeding. Here the rule of exclusion is universal both in civil and criminal cases, 2 Stark. Ev. 400, (side page.)

2d. Where neither of them is a party, but one of them is interested in the result of the proceeding. To this class (the interest of the husband and wife being in legal contemplation identical) the rule is, that if one be incompetent on the score of interest, the same interest operates to the exclusion of the other, subject to the same limitations, 2 Stark. Ev. 708 (side page.)

3d. Where neither of them is a party or interested in the result. In all these cases both husband and wife are competent witnesses, 2 Stark. Ev. 709, (side page.)

There are two other rules of exclusion, founded on the relation of husband and wife; these relate, however, not to the competency of the witness, but of the matter to be communicated. 1st. Neither can directly criminate the other; 2d. nor disclose any matter of confidential communication.

In the case at bar, the husband was not a party to the suit nor interested in the result, and the objection taken, was to the competency of the witness and not to the matter communicated.

It is also objected, to the competency of Mrs. Welch, as a witness for the defendant, that the grantor in an impeached conveyance is an incompetent witness in support of the fairness of the transaction, and the husband being disqualified on this score, the wife is also excluded.

Both propositions contained in this argument, are controverted.

There is no rule in the law of evidence, declaring that the grantor in a conveyance, attacked as fraudulent, is an incompetent witness in support of the fairness of the transaction.

There are only four objections to the competency of witnesses. 1st. Want of understanding; 2d. defect of religious principles; 3d. infamy of character, and 4th. interest, 1 Phil. Ev. 16, Pr. Lawrence J. S. Jourdain vs. Lashbrook, 7 Term Rep. 610.

And it is a universal rule, that a *particep criminis* is a competent witness, both in civil and criminal cases, 2 Stark. Ev. 9. A new rule of exclusion was introduced into the law of evidence, by the case of Walton vs. Shelly, (1 Term Rep. 296) where it was decided that a person is not a competent witness to impeach written security that he has himself given. But this case was a few years afterwards expressly overruled in the same court; Jourdain vs. Lashbrook, 7 Ter. Rep. 610, and while it has been altogether rejected in many of the States, it has been expressly confined in those States where it has been adopted to *negotiable* paper *actually negotiated,* Townsend vs. Bush, 1 Com. Rep. 260; Haig vs. Newton, 1 Rep. Con. Court 423, 2 Stark. Ev. 297, note (2.)

But even the rule in Walton vs. Shelly does not touch the case at bar, nor furnish any countenance to the rule of exclusion, now insisted upon for this com-

MAY TERM
1837.

Baker
v.
Welch.

plainant. The rule there is, that a party to a written instrument shall not be admitted to prove the *invalidity* of the instrument, not that he is incompetent to prove the legality of the transaction, but the precise question now at bar, has been expressly decided, both in New York and Kentucky; and in both these States it has been directly determined, that a grantor in a conveyance impeached as fraudulent, is a competent witness to disprove the fraud. Jackson Ex dem. Masses vs. Frost and Hoff, 6 Johnson Rep. 135, 6 and 7—Baylor vs. Smithers, 1 Littels Rep. 108, cited in 1 Pertells, Dig. 541, case 28, 2 Phil. Ev. 221, 222,—McDonald vs. Nelson, 2 Con. Rep. 139. No case to the contrary, it is believed, can be found, Whipple vs. Lansing, 3 Johnson Chan. Rep. 612, is not against us, although the excluded witness in that case is declared by the chancellor to be a *"particep criminis"* to the transaction, yet his exclusion is placed on the ground of his interest.

Fifth point.—Upon the proof in the cause, the complainant is not entitled to any decree for relief, and therefore the bill was properly dismissed.

The complainant, in order to entitle himself to any relief, is bound to make out in proof the two following propositions:—1st. That Welch, the father, was indebted to him as alleged in the bill, and 2d. That the conveyance from the father to son is fraudulent, as against creditors. Both propositions are essential links in the complainants' chain of title to any relief, and if there be a defect of proof, as to either, his bill is properly dismissed. 1st. There was no proof before the Circuit court (except the county court allowance) of the fact of the father's indebtedness to the complainant or even of his indebtedness to any other person (except the son) at the time of this transaction, or at any time afterwards. The answers put the fact of indebtedness in issue, and not a tittle of proof is given upon this point, except the transcript of the judgment of the Clay county court. This judgment, although good evidence against the whole world of the fact of the judgment and of all the legal consequences of that fact, is not any evidence as against this defendant of the fact, upon which that judgment was founded, the indebtedness of his grantor.

The defendant does not claim under or from the administrator, he was no party to the judicial proceeding in which the judgment was given, had no right to introduce evidence, cross examine the plaintiffs' witnesses, contest the validity of the plaintiffs' demand, or appeal

from the judgment. As to this defendant, this judgment of allowance is "res inter aliis actis," Masons, Devisees vs. Peters, Admr. 1 H. and Munf, 437, Richards Admr. vs. Peter's Heirs 6 Memf. 5, Ewings Heirs vs. Handys Exec. 4 Littel's Rep. 333, 1 Starkie's Ev. 185, 186, 187 189, 190, 191, and note to last cited page. 2nd, the conveyance from the father to the son, is not fraudulent and void as against creditors.

1st. In order to invalidate this transaction on the score of fraud, the complainant is bound to show that the father was indebted at the time, or, at least, that he then, contemplated contracting debts, which were afterwards actually contracted. Such proof is necessary, whether the conveyance be voluntary or for a valuable consideration, Gilpin v. Davis, 2 Bell's Rep. 416, 1 Marsh Rep. 114, and no such proof exists in the cause, other than the county court allowance against the administrator, which is not as has already been insisted, any evidence against this defendant of the fact of the grantors' indebtedness.

2nd. Admitting that the grantor was indebted to the complainant at the time of this conveyance, yet, it is insisted that the assignment of this debt was for a valuable consideration, and not voluntary; and that there is nothing in the transaction constituting fraud in law, nor any sufficient evidence of fraud in fact. And even if it be adjudged a voluntary conveyance, yet, being but a reasonable provision for a child, and the grantor not being embarrased in his circumstances at the time of the gift, it is not per se void even as against existing creditors. Salman vs. Bemet, 1 Day's Con. Rep. 525, Lusk v. Wilkenson, 5 Ves. Jr. 384, Howard v. Williams, South Carolina Law Journal No. 2231, cited in note to 2 Kent's Com. 442, 2d Edition, Taylor vs. Eubank, 3 Marshall's Rep. 241, Hind's Lessee v. Longworth, 6 Peter's U. S. Con. Rep. 277.

2nd. This conveyance being the transfer of property subject to execution, is not, therefore, within the statute of fraudulent conveyance, Cooly and others vs. Ross, adm'r. 3 J. J. Marshall's, 290 Dundas vs. Dectens, 1 Ves. Jr. 196, 9 Ves. Jr. 189 10 Ves. Jr. 368.

Sixth point.—If the bill was properly dismissed for want of proof of indebtedness of the defendant's grantor, this decree ought not now to be reversed, and the cause remanded in order to give the complainant another opportunity of endeavoring to make out his cause.

Opinion of the court, delivered by McGirk, Judge.

The first point for the complainant is, that on the evidence, the decree should have been for him.

2d. That the circuit court for the county of Clay erred in admitting the deposition of Elizabeth Welch, the widow of the intestate, who was the wife of the deceased, at the time the transaction occurred of which she speaks.

MAY TERM 1837.

Baker
v.
Welch.

When this case was before the court a year ago, we were of opinion the circuit court erred in admitting the deposition of Elizabeth Welch, and we so decided; but a re-argument was granted, and we now think that opinion was wrong. In the former opinion, the court went on the ground that the grantor, in case of a fraudulent deed, could not be heard to sustain the transaction, and that if Welch, the intestate, if living, could not give evidence in the case: the wife could not, as the facts she deposed to came to her knowledge during coverture. The reason why Welch could not be a witness, as we then thought, was, because there is strong testimony in the case to shew, that the transaction was intended to cover property from creditors; and, on the authority of a case in 3 Johnson's cases 612; Whipple vs. Lansing, and another, we made that decision. We are now of opinion that the better authority is, that the grantor may give evidence to support a deed made by him, if he is not bound by covenants of title, &c. To place this doctrine correct, several cases have been cited.

*The grantor of a deed, attacked for fraud, may give evidence to sustain it—former opinion on this point overruled.*

It appears from these cases, that a grantor has been admitted to sustain his own deed when the same was attacked as fraudulent; but the objection goes strongly to his credit where there are no covenants of title; the objection goes to the moral character of the witness, and not to his interest; he stands in the light of a *particep fraudès*, and it has long ago been settled, that a *particep criminis* may be a witness. See to this point, 2 Starkie's evidence, page 5, American edition. This last doctrine, more than any other thing, inclines us to the opinion that the former opinion was wrong. But if this point were ruled otherwise, the decree is still right. In this, that there is no proof on record, that Welch was at all indebted when he made the transfer of the Gentry debt to his son; on the contrary, he had large property. We will not enlarge on the evidence, as there was no motion for a new trial, and if there had been such motion, on the proof in the record, it would have failed. The decree is affirmed with costs.

*To impeach a voluntary conveyance, as fraudulent, it must be shown that the grantor was largely indebted at the time conveyance was made.*