Circuit Session in September, 1856,

AND AT THE

Circuit Session in May, 1857.

---

PRESENT:

Hon. ISAAC F. REDFIELD, Chief Judge.
Hon. PIERPOINT ISHAM, } Assistant Judges.
Hon. MILO L. BENNETT, }

---

Cyrus Eaton *v.* Jesse Cooper and Harris Smith.

*Evidence. Estoppel. Justification under process.*

The plaintiff claimed to recover for certain property which formerly belonged to one K., which the plaintiff purchased at a sheriff's sale of his (K.'s) property. This purchase the defendants claimed was fraudulent, and made for K.'s benefit, and with his money, and they had subsequently attached the property as K.'s. *Held*, that the declarations of K. alone, which were offered in evidence for the purpose of showing a fraudulent design between the plaintiff and himself in the

transaction, were only admissible to show his own complicity in the matter, and would be of no account, unless the plaintiff's participation in it was likewise shown.

A decree dismissing a bill in chancery brought by the same creditors of K., under whose process the defendants acted and justified their taking of the property, to test the validity of the plaintiff's alleged claims against K., *held* conclusive against the defendants as to the validity of those claims.

The taking of property by virtue of a writ of attachment may be justified by the officer and creditor's attorney without showing regular subsequent proceedings in obtaining judgment, taking out execution, &c.

But if it is shown that the officer and attorney were parties to a subsequent unlawful disposition of the property, such as the creditors themselves were not entitled to make, they will be deprived of the protection they would have otherwise had of justifying the original taking under a valid process, and be regarded as standing in the position of mere strangers.

TRESPASS for taking a quantity of goods and a horse. Plea, the general issue, with notice that the defendant Smith, as deputy sheriff, attached the property as that of Samuel S. Kimball, by direction of the defendant Cooper, the attorney of the creditors of said Kimball, and that the property belonged to said Kimball, &c. Trial by jury, June Term, 1855,— UNDERWOOD, J., presiding.

The plaintiff showed that he purchased all the property sued for at regular sheriff's sales, most of the goods being sold by J. C. Buswell, constable of Barton, on process in favor of Stanton & Cutler, and in favor of William H. Baxter, both against Samuel S. Kimball, the sale having begun on the 2d February, 1852, and closed 10th March, 1852 ; but a small portion of them, together with the horse, were purchased by the plaintiff, at a regular sheriff's sale at Derby, on an execution in favor of *Jesse Goodnow* v. *said Kimball.* The plaintiff proved the value of the goods, and the taking of them by the defendants, and rested his case.

The defendants read in evidence a writ of attachment and officer's return thereon, in favor of *Pierce, Clark & Reed* v. *said Kimball,* showing this property attached by said Smith, as deputy sheriff, on the 28th February, 1852. Also a writ and return in favor of *Reed, Cutler & Co.* v. *said Kimball,* on which the same property was attached, subject to the attachment of Pierce, Clark

& Reed, the defendant Cooper being attorney for the creditors, in both writs. The defendants also put into the case the executions and officer's return thereon in said two last named cases, though objected to, but the court received them, subject to all legal objections.

The defendants then proposed to prove that said goods were bid off by the plaintiff for the benefit of Kimball by a mutual and secret understanding, and that they were paid for, or to be paid for with Kimball's money, and this for the purpose of placing the goods beyond the reach of Kimball's creditors ; and among other testimony the defendants offered to prove that at the time of the sale at Derby, but before the bidding commenced, said Kimball requested one Stanford not to bid on the horse, saying that if by the bid the horse was run up it would come out of him ; but the witness stating that the plaintiff was not present to hear the conversation, the plaintiff objected to the admission of the testimony, but the court overruled the objection, and admitted the testimony, to which the plaintiff excepted. The defendants also gave testimony tending to show that most of the goods sued for were sold by said Buswell, at the tavern in Barton, and as they were bid off from time to time were carried across the way to the store occupied by said Kimball, where they were originally attached by Baxter and others, and put in the counting room, and afterwards by some one put on the shelves ; and the testimony tended to show that some goods so bid off at Derby were subsequently sold there at Barton by Kimball. The plaintiff testified in his examination in chief that the goods bid off by him at Derby were carried to Barton and left in Kimball's store in Barton, to remain until he (the plaintiff) called for them. After the plaintiff's examination was closed, and one other witness had been examined, the plaintiff came upon the stand wishing to explain, and testified that he did tell Kimball he might sell the goods if he could get fifty cents advance, giving him (the plaintiff) twenty-five cents of it. The defendant then offered to prove that on the 12th of December, 1851, when Kimball failed and his goods were attached by Baxter and others, the plaintiff was sent for by Kimball, and that the plaintiff on that occasion, while the sheriff was in the control of the store of goods, having made the attachments,

executed to the plaintiff two notes, one for twelve hundred dollars and one for three hundred dollars, which were immediately sued and the goods attached on the writs, and that said notes were fictitious and without consideration, and made with design to cover Kimball's property.   The plaintiff showed that at the June Term of the county court, 1852, said Pierce, Clark & Reed, on their motion, were admitted to defend said notes as subsequent attaching cred- ,itors, and at the December Term, 1854, verdict and final judgment was rendered for the plaintiff on said notes; also, that said Pierce, Clark & Reed had, as attaching creditors, brought a bill in chancery, charging that said notes were fictitious and fraudulent, which was answered, the answer traversed, testimony taken, and at the December Term of the court of chancery, 1854, upon the mandate of the supreme court, said bill was dismissed upon its merits; and claimed that by these proceedings the defendants were estopped from disputing the validity of said notes or judgments, and objected to the defendants' testimony, so offered, but the court overruled the objection and admitted the testimony, and the plaintiff excepted.

The plaintiff further insisted that the defendants should first show that their attachments had been followed up by a judgment, and the goods thus attached disposed of by process of law before they could be permitted to show acts of the plaintiff done in fraud of the creditors of said Kimball, but the court overruled the objection.    The plaintiff then offered to prove that the defendants, after they had taken said property, sold a portion of it at retail, and gave away some, and divided most of the goods between themselves, without sale on process, and that the defendants had become *trespassers ab initio,* for the purpose of enhancing damages, and for the purpose of showing that the defendants did not stand in the relation of creditors and had not the right to impeach the plaintiff's title as fraudulent as against the creditors of Kimball, but the court excluded the testimony, and the plaintiff excepted.    The defendants' testimony tended to show that after the goods were thus bid off and put back into Kimball's store, the plaintiff left and went into Canada, and did not make any other disposition or arrangement about the goods; that they were in Kimball's store, and that Kimball in the meantime had sold some

goods so bid off by the plaintiff. The plaintiff's testimony tended to show that the plaintiff went to Montreal in Canada and to Canada West, some two hundred and fifty miles distant, on business, and did not return till the 27th of February, the day before the goods were attached by the defendants; that said goods had been placed upon the shelves by Kimball in the plaintiff's absence and without his consent; that other persons who had bid off goods at said auction, carried them to Kimball's store and placed them in the counting-room; that the goods carried to the store were so marked as to distinguish the respective owners, and that before the defendants attached and took the property sued for, the plaintiff asserted title and offered to point out his property and show the marks by which the same were distinguished, but that the defendants persisted in removing them, and that the plaintiff subsequently paid Buswell his bids. The defendants gave testimony showing that the plaintiff attended the auction, and Kimball and he had frequent private interviews while the bidding was going on, and that both the plaintiff and Kimball on one occasion, at Derby, desired the officer to proceed with the sale before any bidders of any consequence had come, and that Kimball's conduct was such as was calculated to have the goods sold at undervalue. The court charged the jury, among other things not excepted to, that if they believed that the goods were bid off by the plaintiff, in pursuance of a secret understanding between him and Kimball that Kimball was to pay the bids and that the purchase was really Kimball's, though ostensibly the plaintiff's, and that this was done with a view of placing the goods out of the reach of Kimball's creditors, the transaction would be fraudulent as to Kimball's creditors; and, as giving character to the purchase, the jury were at liberty to consider whether the twelve hundred and the three hundred dollar notes were fictitious and without consideration, and if they found them to be so, they were at liberty to take this fact into the account in determining the character of the plaintiff's purchase of the goods. The jury were further told that if they found that the plaintiff's purchase was of the fraudulent character, as claimed by the defendants, and that the purchase was really Kimball's, though nominally the plaintiff's, and were paid for or to be paid for by Kimball's money; and that

in pursuance of this, the plaintiff bid off the goods and returned them into the store and into the possession and control of Kimball, to be by him disposed of for his own benefit, and the goods were so situated when the defendants took them, the plaintiff could not recover.    To this charge, the plaintiff also excepted, the jury having returned a verdict for the defendants.

*Kimball* and *T. P. Redfield*, for the plaintiff.

I. The plaintiff excepts to the admission of Stanford's testimony.   It was admitting the naked declaration of Kimball, neither in the presence nor in the knowledge of the plaintiff, to control his rights.   Kimball requested Stanford not to bid on the horse, saying if he run it up it would come out of him.   It seems the horse was bid upon by several, and ultimately struck off to the plaintiff.   Had any person bid in the horse, this evidence was just as potent against one as another; and to allow such naked declarations of a stranger to affect the rights of a purchaser at a public sheriff's sale would seem to put purchasers' titles upon very precarious footing.

Kimball was *doing nothing* with the horse.   It had been seized by the sheriff, and was in the sheriff's possession for a long time previous to such sale; so it was no part of the *res gestae ; Elkins* v. *Hamilton et al.*, 20 Vt. 630.

II. The validity and *bona fide* character of the two notes had been litigated between this plaintiff and Pierce, Clark & Reed, and fully established by a verdict of a jury and in a court of equity, and the plaintiff should not be compelled to try the same issue with the same party again.

The fact that the officer was induced to make return on process in favor of Stanton and Cutler, that he had attached the property on that process, subject to the attachment of Pierce, Clark & Reed, is no protection, inasmuch as the attachment of Pierce, Clark & Reed was more than sufficient to exhaust all the property attached, and the defendants profess to have applied the avails of it on their execution, and seek to justify all their acts (except the disposition of the horse,) by that process, they must be content to stand upon the rights of Pierce, Clark & Reed.

30

The creditors having once tested the *bona fide* character of the notes, all the creditors are bound by the judgment.

III. The defendants do not stand in the place of *creditors.* They *misuse* a process to get possession of the goods, and then, without color or pretense of sale, divide the goods among themselves.

This court has decided that where the officer bids in the property himself it is no sale, and the officer liable in trespass for the property ; *Holman* v. *Kimball,* Orleans Co. Sup. Ct. 1856. If the officer would be a trespasser where he bids in the property, a *fortiori,* he would be so when he uses the property up, or disposes of it without any public sale. In the case of *Abbot* v. *Kimball,* 19 Vt. 552, the court seem to admit that a sale in a writ without notice to the defendant would make the officer a trespasser. In this case there was no notice to any one, nor public sale ; *Bond* v. *Wilder,* 16 Vt. 367.

IV. The joint conversion of the property without sale, the partition between themselves, as robbers divide booty, by relation, makes the whole act tortuous, and the defendants liable as *tort feazors.* What right have trespassers and robbers to talk of secret trusts ? Can a thief justify his larceny by alleging that the man he plundered intended to keep his property from his creditors ?

*Cooper & Bartlett,* for the defendants.

I. The execution and officer's return were properly admitted.

II. Kimball's declaration was admissible to prove him connected with Eaton, acting with a purpose to defraud his creditors, and as a part of the transaction.

III. The plaintiff insisted that the defendants were estopped to prove the notes fraudulent by the judgment at law and in equity, because the defendants represented Pierce, Clark & Co. But Reed, Cutler & Co. were not affected by that proceeding, and the defendants acted under their process in attaching the property, and could justify the taking under their process, and prove the goods Kimball's.

IV. The plaintiff claims that the defendants must first show the demands prosecuted to judgment against Kimball before they

could justify the taking on writs against Kimball, and prove the property his by the plaintiff's acts done in fraud of creditors.   If Kimball was in possession of the property, and it was really his, any evidence tending to prove that was proper, and the order of putting in the evidence would not change the right.   Again the defendants should be allowed to show the fraud existing at the time of taking, as the defendants' right would not at all depend on after acts, but they must have the right then or fail.   The plaintiff could not be allowed to go behind the process and prove there was no debt; he could only be allowed to impeach the defendants' claim of fraud; *State* v. *Daggett et al.*, 2 Aiken 148; *Stewart* v. *Martin*, 16 Vt. 397 ; *Fuller* v. *Sears & Clement*, 5 Vt. 527.

V. The plaintiff offered to prove that the defendants treated the property after the taking so as to become *trespass ab initio*, to enhance damages and to bar the defendants from impeaching the plaintiff's title, as fraudulent as to creditors.   This evidence was properly rejected.

1. Because, although the officer so treated the property as technically to become a *trespasser ab initio*, yet he could justify so far as damages are concerned, by showing the property applied in payment of the real owner's debts.

2. An officer is only made a *trespasser ab initio* as to the real owner of the property, and for the abuse of an authority delegated by law to take the property.

3. There must be a clear violation of the right of the owner, who must be the plaintiff ; and for the actual injury only can he recover; 3 Blackstone 213 ; 1 Sw. Dig. 316 ; *Soper* v. *Sumner et al.*, 5 Vt. 274; *Paul* v. *Slason*, 22 Vt. 231.

4. The real effect of this evidence is no more nor less than an offer to impeach the .officer's returns on the writs and execution, which upon its face is fair.   If the return on the writ or execution can be impeached by the plaintiff, why not the judgment ?   If the proceedings are *prima facie* regular, that is sufficient to justify the defendants, and they are not bound or supposed to be prepared to try any issue arising on the demands against Kimball ; *Fuller* v. *Sears & Clement*, 5 Vt. 527.

VI. When the possession of chattels is in another the plaintiff must prove property in himself before he can recover, and if the

defendants prove property in the person having possession, that defeats the plaintiff's action; *Smith* v. *Miller*, 1 T. R. 475; *Brainard et al.* v. *Burton et al.*, 5 Vt. 97 ; and this without showing process.

VII. If the defendant could not impeach the plaintiff's title to the property sued for, any person might sue and the defendant could not be permitted to impeach his title by showing the property another's; he would recover though he never was owner.

VIII. This action is for an injury to the possession, but if the plaintiff had not possession, he must rely upon his right of property. If he has the right of property the process does not aid the defendants, as it would not justify taking the plaintiff's property; if the property is not the plaintiff's, he fails. His right only is in litigation, and if it is fraud he relies upon he fails, as that vitiates all acts ; 2d Stark Ev. 586; *Morris* v. *Gill*, N. Chip. 63; 1 D. Chip. 49.

The plaintiff can gain nothing by being a fraudulent actor in a purchase at sheriff sale, if the property was Kimball's ; *Webster* v. *Dennison*, 25 Vt. 493.

IX. In *Bond* v. *Wilder*, 16 Vt. 393, there was no evidence impeaching the plaintiff's title. The only question determined was whether the process was void.

X. If the property was taken under process, and that process abused, so that the party defendant became a *trespasser ab initio*, the rule of damages is the real injury to the plaintiff; *Stewart* v. *Martin*, 16 Vt. 397 ; *Paul* v. *Slason*, 22 Vt. 231.

The opinion of the court was delivered by

REDFIELD, CH. J. This case is somewhat peculiarly situated in regard to some of the questions involved in it. The suit is brought against the officer and attorney who made the attachment, and who made it in behalf of different creditors, who, in consequence of subsequent litigation, may be entitled to defend upon different grounds.

I. The first question made is in regard to the admissibility of the declarations of Kimball, for the purpose of proving a fraudulent design between him and the plaintiff in the purchase of the property at auction. This purpose or design must have been

participated in by both Kimball and the plaintiff, in order to render the property liable to attachment by the creditors of Kimball. And like a partnership or any other joint purpose or enterprise it may, no doubt, be shown by separate declarations of the parties in question. But the admission of such testimony, unless it were properly presented to the jury in the charge of the court, might, no doubt, have a tendency to mislead them. But as we have not the charge upon that point, and no exception was taken to it, we may fairly presume, perhaps, that the jury were told that this testimony alone was not sufficient to make the case against the plaintiff, and that his participation must be shown by separate and independent proof.

II. The question in regard to the estoppel seems to be a very simple one ; but some difficulty arises, perhaps, in its application. But so far as Pierce, Clark & Reed were concerned, the proceeding in chancery, and probably the being made a party upon their own motion and defending the proceeding at law, as subsequent attaching creditors, upon the very notes now in question, would conclude them as to the validity and consideration of the notes. For in the chancery proceeding the principal allegation in the bill upon which the interference of a court of equity is invoked is, that these notes were fictitious, and without consideration. The defendant there, the present plaintiff, is called upon to state, and does state in detail the consideration of the notes, and upon full hearing the bill is dismissed, in general terms, upon its merits. This must certainly be a full estoppel upon them in all subsequent proceedings, as has been often held in this state, and the jury have no right to inquire into it so far as this plaintiff and Pierce, Clark & Reed are concerned, and there is no want of mutuality. But in regard to Reed, Cutler & Co. the estoppel will not operate. But it would seem that only the avails of the horse went to them. It is only, then, to that extent that the defendants could shield themselves under their rights as creditors, as their final disposition of the property shows that they only took that portion of the property for their benefit. This brings us more properly upon the next point in the case.

III. The first part of this point is, that the defendants were bound to show their attachments followed up by judgments, execu-

tions and sale of the property. But perhaps this is not requisite in order to justify the taking. One might not become a trespasser by a mere omission to sell. The attorney and officer could not control that. But the other portion of this point is that the plaintiff offered to show that the defendants, after the attachment, proceeded to divide the property among themselves, and made no sale of large portions of it, with a view to deprive them of the shield of the attachment. And according to all the late and best considered English cases, the testimony, if believed by the jury, would have made the defendants trespassers *ab initio*, as showing that they made use of the process as a mere sham or pretense to cover some other purpose; *Stoughton* v. *Mott*, 25 Vt. 668. For that portion of the property which the defendants put to their own use (if any) they certainly should not be allowed to stand as creditors. As mere strangers, it is immaterial to them what motive induced Kimball to transfer the property to the plaintiff. He can hold the property against all the world, except those whose rights are infringed by the transfer. And these defendants cannot shield themselves under a mere license from the creditors to take the property. The creditors have no right to the property, except in a particular mode, i. e., under process, and in payment of their debts. For no other purpose can they, or any one in their behalf, take the property. And the defendants, being shown to have used the process as a mere cover to get the property into their possession in order to put it to their own use, are in no better condition than if they had taken the property without process. The law will not allow any one to indulge his own will for his own advantage, under a pretense so shallow. We assume the plaintiff could prove what he offered to do. This we are obliged to do, in order to test the soundness of the decision rejecting the testimony. For these reasons we think the case must be sent to a new trial.

Judgment reversed, and case remanded.