# CASES DETERMINED

AT THE

## *January Term, 1880.*

---

### GRAFTON VS. CARMICHAEL.

*March 9 — March 30, 1880.*

TRESPASS in taking goods: When one becomes a trespasser *ab initio*. *(1) Complaint construed: nature of action. (2) General doctrine as to trespass* ab initio. *(3) Case stated: Attachment suit.*

1. The complaint alleges that, on etc., defendant broke and entered upon plaintiff's farm, and took from his possession certain personal property of the plaintiff, carried it away and converted it to his own use. *Held,* an action *de bonis asportatis*, and not of trover.
2. According to the general tendency of modern decisions, one who does an act under a lawful authority will not be rendered a trespasser *ab initio* by subsequent irregularities, except where he does or consents to some positive act which goes to show that the original lawful act was done with an unlawful purpose.
3. Accordingly, the plaintiff, in an attachment suit in justice's court, may justify a taking of defendant's goods under a valid attachment, although the subsequent judgment against the attachment defendant, and sale of the goods on execution, are invalid by reason of a subsequent failure of the justice to cause notice to such defendant to be posted, etc., as required by law where personal service of the writ is not made; and this though such attachment plaintiff received a portion of the money made on the execution.

APPEAL from the Circuit Court for *Dane* County.

Plaintiff appealed from a judgment in defendant's favor. The case is stated in the opinion.

For the appellant, there was a brief by *Welch & Botkin,*

his attorneys, and *F. J. Lamb*, of counsel, and oral argument by *Mr. Lamb*. They contended, among other things, 1. That the writ of attachment was no protection to either the officer or the attachment plaintiff, where there was a failure to obtain jurisdiction of the attachment defendant. *Hale v. Cummings*, 3 Ala., 398; *Lamb v. Belden*, 16 Ark., 541; *Watts v. Willett*, 2 Hilt., 212; *Johnson v. Edson*, 2 Aik. (Vt.), 299; *Clap v. Bell*, 4 Mass., 99; *Suydam v. Huggeford*, 23 Pick., 465; *Harrow v. Lyon*, 3 G. Greene, 157; *O'Connor v. Blake*, 29 Cal., 312. 2. That if one enters the possession of another by direct license of the possessor, nothing he may do afterwards will make him a trespasser from the beginning; but if he first invades the possession by virtue of a license *given by law* (as an officer with a writ, a guest at an inn, etc.), and afterwards, in carrying out the purpose for which the entry was made, exceeds the powers given him by law in the matter, he becomes a trespasser from the beginning. *Sackrider v. M'Donald*, 10 Johns., 253, per KENT, C. J. 3. That the court erred in holding the complaint to be merely for trespass. The pleading was not confined to the trespass, but set forth plaintiff's whole case, and alleged the conversion of the horse by defendant as the principal ground of damage. And the pleading ought to be liberally construed with a view to substantial justice, irrespective of ancient forms of action.

For the respondent, there was a brief by *Vilas & Bryant*, and oral argument by *Wm. F. Vilas:*

The fact that defendant sued out the warrant of attachment and put it into the officer's hands, would not make him liable for taking the property of this plaintiff; because the warrant directed only the taking of Nelson Grafton's property, and the taking of any other under it would be the officer's independent, personal act. The only ground on which this action can be based against this defendant is, that he directed and aided the officer in taking the property levied upon. And so the complaint charges distinctly that, and nothing more; and

plaintiff's evidence against defendant was confined to that charge. But that act was completely justified by producing the officer's warrants of attachment, with proof that the attachment plaintiffs were creditors of Nelson Grafton, and that the alleged sale to this plaintiff was either a false pretense or fraudulent as to creditors. If the officer or the justice subsequently failed to take such further steps as would render the subsequent sale on execution valid as against Nelson Grafton, that did not render this defendant liable, he not having participated in that act. Even the officer, it is suggested, would not be liable in that case, at least until after a demand and refusal (which were not shown), the original taking having been lawful. See *Clap v. Bell* and *Suydam v. Huggeford*, cited for the appellant. The rule in regard to trespasses *ab initio* seems to have nothing to do with the question, as there is no proof of any subsequent abuse of authority by defendant to characterize his previous lawful act as done with an unlawful motive.

COLE, J. It is essential to determine at the outset the nature of this action, because upon that question rests entirely the sufficiency of the defense. The counsel for the defendant insists that it is purely an action of trespass *de bonis asportatis*, while the counsel for the plaintiff claims that it should be treated as an action of trover for a conversion. The point is technical, yet it seems to be a vital one in view of the justification set up in the answer and established upon the trial. Upon looking at the complaint, we have no doubt that it is simply an action for a tortious taking and carrying away of personal property from the possession of the plaintiff.

The complaint charges and alleges, in substance, that on the 26th day of September, 1876, the defendant wrongfully broke and entered upon the farm of the plaintiff, and took from his possession the personal property described, being the property of the plaintiff, and then and there carried the same

away, and converted it to his own use. Thus it will be seen that the gravamen of the charge is a wrongful and unlawful taking of personal property from the possession of the plaintiff; and this act, of course, was the matter which the defendant was called upon to justify. He did attempt to justify the taking, by alleging in his answer that the property in question was seized by the sheriff by virtue of certain warrants of attachment which were sued out by him and other parties, all creditors of one Nelson Grafton, who, it was alleged, was either the owner of the same, or had fraudulently disposed of the property to the plaintiff for the purpose of defrauding his creditors.

On the trial, the defendant was permitted to give testimony, against the plaintiff's objection, in support of these averments of the answer, showing that all the plaintiffs in the attachment suit named were creditors of Nelson Grafton, and that the property was seized upon writs of attachment sued out by them; and also introduced proof which tended very strongly to impeach the validity of the sale made by Nelson Grafton to the plaintiff, as against the former's creditors. The warrants of attachment were offered in evidence by the plaintiff, and were valid and regular in form. The plaintiff also introduced papers and transcripts of the justice's docket of proceedings in the attachment suits, which showed that the sheriff seized the property on the warrants of attachment, and subsequently sold it under executions issued on judgments rendered therein. But it appeared that these judgments were invalid, by reason of the failure of the justice to cause notice to the attachment defendant to be posted or published as required by law, where personal service of the writs was not made. *Champion v. Argall*, 25 Wis., 521. It appeared that the defendant was present, aiding and directing the officer when he seized the property upon the attachments, but did not in any other way participate in its taking or possession.

Now the question, arising in various ways upon the record, is, whether the defendant could justify the original taking under the writs of attachment without showing regular subsequent proceedings in the attachment suits. He was allowed to prove, as we think, properly, that the plaintiffs in those suits were creditors of Nelson Grafton (*Bean v. Loftus, ante,* p. 371), the seizure on the attachments against plaintiff's vendor, and that there were reasonable grounds for questioning the *bona fides* of the sale made to him. But the counsel for the plaintiff insists that though the property was seized in the first instance upon valid attachments, still this fact affords no legal excuse or justification for the taking, because, as the writs were not properly served on the attachment defendant, the proceedings did not and could not terminate in valid judgments. He says the subsequent unlawful disposal of the property, under executions issued on void judgments, had the effect to deprive both the officer and defendant of the right to justify the original taking under valid process, and rendered them liable as trespassers *ab initio.*

We do not concur in this view of the law. In the present case we have only to do with the sufficiency of the justification of the defendant, who had no other participation in the taking than by aiding the officer to make the levy on that occasion. He has not been guilty of abuse of authority, or of any wrongful act, which would render him liable as a trespasser. The failure of jurisdiction in the attachment suits is not attributable to any act of omission or commission on his part. It was the fault alone of the justice, who failed to have the proper notice published. It is true, it appears that the defendant received a portion of the money realized on the sale of the property under the executions, and possibly rendered himself liable therefor in some other form of action. That is a point, however, we need not now consider. But the question here is, whether this action of trespass can be maintained against the defendant under the facts and circumstances clearly

established. It will be borne in mind that the original taking was under lawful writs; and with this taking the agency of the defendant in the matter ends, unless, on account of the defect in the subsequent proceedings, which was not owing to his fault, he is liable to be treated as a trespasser *ab initio;* and we do not think he can be held liable on that ground, there being no proof of any positive wrong on his part, which would tend to show that the original taking, though lawful, was for some other indirect or unjustifiable purpose. Nothing of the kind can be claimed here.

Of course, the rule is well settled that one who at first acts with propriety under an authority or license given by law, and afterwards abuses it, may be treated as a trespasser from the beginning. The reason of the rule, as stated by an elementary writer, is, "that it would be contrary to sound public policy to permit a man to justify himself under a license or authority allowed him by law, after he had abused the license or authority thus allowed him, and used it for improper purposes. The presumption of law is, that he who thus abuses authority assumed the exercise of it in the first place for the purpose of abusing it. The abuse is, therefore, very justly held to be a forfeiture of all protection which the law would otherwise give." Waterman on Trespass, § 493. Also, *Ross v. Philbrick*, 39 Maine, 29; *Everett v. Herrin*, 48 Maine, 537. But latterly courts are not inclined to extend the rule which makes one a trespasser by relation; and the above author says that, "according to modern English cases, to implicate one as a trespasser *ab initio*, he must do, or consent to, some act which goes to show that the original taking was with the purpose of putting the thing to an illegal use. These decisions rest upon the avowed ground of narrowing, to the utmost, the doctrine of making officers and others trespassers by means of some technical irregularity in the detail of their duties." Section 492.

In *Stoughton v. Mott*, 25 Vt., 668, will be found a very

learned and full discussion of this question by REDFIELD, C. J., where many of the authorities are cited and commented on. See, also, *Eaton v. Cooper et al.*, 29 Vt., 444, where the same distinguished jurist, in delivering the opinion of the court, in effect states that "the taking of property by virtue of a writ of attachment may be justified by the officer and creditors' attorney, without showing regular subsequent proceedings in obtaining judgment, taking out execution," etc. But, without spending more time upon the question, we will say that the cases generally tend to support the proposition laid down in *Gates v. Lounsbury*, 20 Johns., 427, that "when an act is lawfully done, it cannot be made unlawful unless by some positive act incompatible with the exercise of the legal right to do the first act." In the light of these authorities it is impossible to say, upon the evidence in this case, that the defendant can be held liable as a trespasser from the beginning, because the justice lost jurisdiction of the attachment suits through failure to give the requisite notice to the attachment defendant. The case of *Bromley v. Goodrich*, 40 Wis., 131, is so dissimilar to this in its facts that it is readily distinguishable. This view of the law is decisive of this case, and results in a judgment of affirmance.

*By the Court.* — The judgment of the circuit court is affirmed.