Mr. Justice CURTIS
 

 delivered the opinion of the court.
 

 This is an appeal from a decree of the Circuit Court of the United States., for the eastern district of Arkansas.
 

 It appears from the allegations of the bill, which are supported by the proofs, that in December, 1843, John D. Bracy, then a resident of Alabama, borrowed of the Branch of the Bank of the State of Alabama at Mobile (the appellees in this
 
 *377
 
 case) the siim of $9,065, and that' Maria Matheson, who was his mother, and another person, joined in the promissory note which was given to the hank for the loan. To indemnify Mrs. Matheson, Bracy conveyed certain negro slaves to one Gale, in trust, to save her harmless. The debt not being paid at maturity, the bank recovered a judgment on it in November, 1845. The trustee afterwards sold some of the slaves, and their price was applied to reduce the debt; but some time in the year 1846, Bracy privátely left the State of Alabama, and carried away with him the residue of the slaves, and some other properly, not leaving, so far as appears, any other property in that State, out of which the judgment in favor of the bank could be satisfied. He appears to have been for a time in the State of Mississippi. Sometime in 1847 he went to Louisiana; and in the year 1848 he removed with these slaves to White county, in the State of Arkansas, where he employed them.in making some improvements on a tract of. Government land, where he and they resided. In September, 1849, Bracy went to Louisiana, where Margaret McRea, his sister, one of the appellants, then resided, and there made a bill of sale of all the , slaves to her. She sent one of her sons to take possession of them; and Bracy also returned to their place of residence, in White county, where he continued to reside until the spring of 1850, when Mrs. McRea moved thither; and from that time they resided together; she having entered the land on which the plantation was, and taken a title in her own name. '.Bracy continued to reside there, having the principal ostensible man--agement of the business of the plantation, until about a year before his decease* in April, 1852, when he removed to the county town, about six miles distant, to practise his profession as an attorney. He died deeply insolvent, the debts proved, against his estate being upwards of fourteen thousand dollars; the sales of all his inventoried effects amounting only to the • sum of $345.90. The bill asserts a lien on these slaves by ■ •virtue of the trust-deed, of which it avers Mrs. McRea had notice when she purchased. But our opinion is, that Gale, the trustee, and Mrs. Matheson, the
 
 cestui que trust,
 
 are indispensable parties to a bill for the subjection of this property to the claim of the bank, by virtue of the trust-deed. Upon that "footing the bill cannot be maintained.
 

 But we' are all of opinion, that the sale to Mrs. McRae was in fraud of creditors^, 'and especially of the bank. Without detailing 'the evidence, we think it enough to. say, that the .removal of the property from Alabama by Bracy, leaving the judgment of the bank unsatisfied, his insolvency, the relation between' the parties, their subsequent residence together, the
 
 *378
 
 manner in which, the property was held and managed, are causes of very grave suspicion. The hill charges, that if this property was conveyed to her, '“it was. so conveyed with intent and for the purpose of hindering, delaying, and defrauding the creditors of the said .John D. Bracy.” The answer of Mrs. McRae does not deny this allegation.
 

 In the course -of responding to the claim of the hill founded on the trust-deed, her answer says: “ She therefore charges, that there was no encumbrance whatever on the said slaves, or any of them, at the time she purchased them; and avers that she purchased them in good faith, and without any notice or knowledge whatever of a subsisting, lien upon them by virtue of said deed-of trust.”' We understand this averment of good faith on her part to relate simply to her ignorance of a lien by the trust-deed, and that it does not meet the explicit allegation in the bill, .that the purpose of the sale was to conceal the property from creditors;,, and though the failure of the answer to meet this charge, in the bill does not operate as a technical confession of its truth, it does lay. a foundation for the belief that if the defendant could have truly denied it, she would not have foregone the decided advantage of such a denial in an answer which puts the complainant oh proof of the contested fact by more than one witness.
 

 The answer alleges, that the agreed price of the sale was $3,500, payable; in instalments of $875 each, in five, six, seven, and eight years; and that four promissory notes were executed accordingly. It does not say what was done with the notes, after they were executed. No such notes'were found among the effects of Bracy, to be inventoried. Neither of these notes, if in existence, had become payable when this bill was filed, and we think the attempt to show that something had. been paid on account of them by the delivery of some cotton is not successful.
 

 In our opinion, the charge in the bill, that the sale was fraudulent as to creditors, is made out in proof, and this is sufficient to sustain the decree of the Circuit Court.
 

 The decree of the Circuit Court is affirmed with costs: