## WARD *et al.* *vs.* LAMBERTH.

1. Courts of Equity more readily raise and act upon a presumption of fraud from facts proven, than do Courts of Law.
2. A purchased a tract of land, at Sheriff's sale, at a price much below its value, under an agreement with B., (the defendant in execution,) that he would hold the land for the benefit of B., or of B. and his family, and that the latter should, as he might be able, refund the purchase money with interest. A., after, executed a bond for titles to said land, to C., a minor son of B.—C. having knowledge of the original agreement. B. repaid part of the purchase money, and remained in possession of the land until his death, ten years after the Sheriff's sale. D., a creditor of B., whose debt existed before the purchase by A., filed his bill to set aside A's deed, and C's bond for titles, and for a re-sale of the property for his benefit. Decreed accordingly, with a proviso that the balance of purchase money due A., with interest, be first paid from the proceeds of the re-sale. *Held,* that the decree was right.

In Equity, in Clayton Superior Court. Tried before Judge BULL, at the May Term, 1860.

Joseph Lamberth filed his bill in equity, in the Superior Court of Fayette county, against Jesse Ward and John S. Westbrook, in which he complains:

That he was the security upon the guardian's bond of

---

**PRESUMPTION OF FRAUD.** "Equity has jurisdiction concurrently with law in all cases of fraud. §4024, Civil Code of 1895; 2 Ga. 304. The **courts of equity more readily raise and act upon a presumption of fraud than courts of law,** from facts pointing thereto. 31 Ga. 150." Orten *v.* Madden, 75 Ga. 85.

Gainey Westbrook, guardian of the minor children of one Isaiah Warren, deceased; that the said Gainey Westbrook, having failed to account to his said wards, in respect to such guardianship, was sued by them, and a judgment had against him for a considerable sum of money; that a *fi. fa.* issued from said judgment and was returned by the proper officer; that there was no property of the said Gainey Westbrook to satisfy the same; that a bill in equity was then filed against the said Gainey Westbrook, as principal, and the complainant, as security, on said guardian's bond, and at the September Term of the said Superior Court, in the year 1853, a decree was rendered in favor of the ordinary, for the use of the said minors, against the said Gainey Westbrook, as principal, and the complainant, as his security, for the sum of twelve hundred and fifty four dollars, with interest from the first day of March, 1852, and all cost; that an execution issued from said decree, and was levied on lot of land number 141, in the seventh district of said county, as the property of the said Gainey Westbrook, of which land the said Gainey Westbrook was then in possession, and had been for more than eighteen years, having bought and paid for the same with the funds of his said wards; that the said Gainey continued to reside upon, and possess, said land, until some time in the year 1856, when he died, leaving his family in possession of said land, and who were in possession up to the time of filing said bill; that, in the year 1843, the said Gainey being involved in debt, the said land was levied on, and sold at sheriff's sale, by virtue of a *fi. fa.* amounting to fifty or sixty dollars; that, by a verbal agreement between the said Gainey Westbrook and the said Jesse Ward, the said Jesse Ward bid off said lot of land, at said sale, for the benefit of the said Gainey, and was to hold the same as an indemnity, until the said Gainey should refund to him the purchase price, and the interest thereon; that under, and pursuant to such agreement, the said Ward bought said land for about fifty or sixty dollars, when it was worth one thousand dollars; that said Ward bought said land, and took the sheriff's deed thereto, by the agreement aforesaid, for the purpose of defrauding the creditors of the said Gainey, and shielding said land from the payment of said Gainey's debts; that, on the day of the sheriff's sale, or a short time thereafter, the said Gainey, by payments, reduced the said pur-

chase price, due to said Ward, to about thirty or thirty-five dollars, which is all the claim or interest said Ward had to said land; that, when said land was levied on, by virtue of the *fi. fa.* issued from said decree against the said Gainey and the complainant, the said Ward interposed his claim to the same; that, upon the trial of the claim case, the plaintiff in *fi. fa.* was unable to condemn said property, and the same was found not subject to said *fi. fa.;* that Gainey Westbrook had been, for many years, and was then, wholly insolvent, having no property, except the land so held by Ward, as aforesaid, and that he died insolvent, and that no one has administered on his estate, or is likely to do so, as he left nothing to administer upon; that complainant has been compelled to pay off the said *fi. fa.* against the said Gainey and him, amounting to about seventeen hundred dollars; that the said lot of land, at the time of filing said bill, was worth thirteen hundred dollars, and is the only means left to the complainant to mitigate his loss as said Gainey's security; that complainant has been informed, and believes it to be true, that John S. Westbrook, a son of the said Gainey, is endeavoring to redeem said land, and that, by some arrangement, he has the title bond of said Ward for said land; that the said John S. Westbrook had full notice and actual knowledge of the fraudulent agreement between his said father and the said Ward, and is now endeavoring to perfect and perpetuate said fraud to the injury of the complainant.

The prayer of the bill is: That the defendants may discover the facts on oath; and that the sheriff's deed to Ward, and the bond for titles from Ward to John S. Westbrook, may be set aside and be delivered up to be cancelled; and that the said lot of land may be sold, and the proceeds applied first to the payment of the balance of the purchase price due to said Ward, and then to the payment (as far as it will extend) of the *fi. fa.* against the said Gainey and complainant; and for general relief.

The answers of the defendants deny that any such agreement as charged in the bill, ever was made between said Ward and the said Gainey, and that, if the same ever existed, John S. Westbrook had no notice or knowledge of the same, but that Ward bought the lot of land for himself alone. They also deny that Gainey Westbrook ever paid Ward any of the purchase money for said land. They also deny that

Ward et al. vs. Lamberth.

the land was worth one thousand dollars, when sold by the sheriff, but that it was worth only about two hundred dollars. They also deny that Gainey Westbrook remained in possession of said land after the sheriff's sale, under any such agreement as charged, but insist, that he was the tenant of Ward, paying and promising rent up to the time Ward bargained the land to John S. Westbrook, and that after that time the said Gainey and his family remained on the land by the permission of the said John S. Westbrook.

The defendants, substantially, admit or ignore all the other material facts in the bill, but insist that the verbal agreement, charged in the bill, is void, because against the statute of frauds, and also insist that complainant, having failed to file his bill until after the trial of said claim case, that he is estopped and barred by the judgment in said claim case.

After the bill and answers were read, the complainant introduced the following testimony:

That, about the time of filing this bill, the complainant paid to the plaintiff's attorney the full amount of the *fi. fa.* in favor of the ordinary, for the use of the minors of Isaiah Warren against Gainey Westbrook, principal, and complainant, as security, amounting to about seventeen hundred dollars; that the defendant, Jesse Ward, told Thomas J. Hood, that he held the lot of land in dispute, and that he was holding it for the benefit of Gainey Westbrook and family; that Westbrook had paid all up but a small remnant, and that, when that was paid, he, Ward, intended to make a deed to the boys, so that it should be equally divided amongst them; that, on the same day, when what Ward had said was communicated to John S. Westbrook, he called upon the witness to bear the conversation and declarations of Ward in mind, as there might, some day, be a lawsuit about it, and that he, Westbrook, believed Ward to be mean enough, at some future day, to try to defraud the children out of the land; that, at different times, between the years 1852 and 1854, the defendant, Ward, told Tandy D. King, that he bought the land in dispute at sheriff's sale, and that some thirty or thirty-five dollars of the purchase money was still owing to him, and that, if he could get the money that was due him, that he had advanced toward the land, and could get back his bond that he had given to some of the Westbrooks for the

title of said land, he would make a deed; that, in frequent conversations with said King, in the years 1855 and 1856, the said Ward also told King, that, if the complainant would pay him three hundred dollars, he would make him a deed to the land, and risk his bond for titles; that Jesse Ward and Gainey Westbrook called on William J. Russell, the clerk of the Superior Court, to go to his office to see the amount of a bill of cost that had accrued in and about holding said Westbrook's land; that the witness showed them the bill of cost, and that Ward said to Westbrook that he had that bill of cost, and some twenty-five or thirty dollars' attorney's fee, and that that bill of cost must be paid by him, Westbrook, and that, when that was paid, the land was his, Westbrook's, and that he, Ward, would make a deed to any one for him; that this occurred in the year 1851.

The complainant then closed his testimony and the defendants introduced the following testimony, to wit:

A note, signed by Gainey Westbrook, payable to Jesse Ward, or bearer, dated 10th of March, 1843, and due the 25th of December, 1843, for twenty-five dollars, with a credit thereon of fifteen dollars, dated 12th of June, 1844.

Also a note, signed by said Gainey Westbrook, payable to said Ward, or bearer, dated the 4th of January, 1844, and due the 25th of December, 1844, for twenty-five dollars, with a credit thereon of twenty dollars, dated the 11th of March, 1845.

Both of these notes purported on their face to have been given for the rent of lot of land number 141, in the seventh district of Fayette county.

Also a bond, signed by Jesse Ward, dated 26th of December, 1846, reciting a sale of said land by Ward to John S. Westbrook, for the sum of eighty dollars, and conditioned to make to said John S. Westbrook a title when the said purchase money should be paid.

Also the testimony of Bryan A. Westbrook, the son of Gainey Westbrook, and brother of John S. Westbrook, who testified: that, in 1852, he rented seventy acres of the lot in dispute from John S. Westbrook, and cultivated it that year, and paid him eighty dollars for it; that from the sheriff's sale, in 1843, up to the sale from Ward to John S. Westbrook, the witness never knew his father to lay any claim to the land, and that his father rented the land from Ward;

that witness saw his father pay Jesse Ward twenty dollars in 1845, which the parties said was for the rent of the land; that the money was paid on a note, but whether it was on one of the notes read in evidence, witness does not know; that, from 1846 up to 1850, his father rented the land from his brother, John S. Westbrook; that, in 1850, his father ceased to cultivate the land, since which time his brother has. rented portions of it to persons in the neighborhood; that the witness has no interest in the land, nor does he know of any of his father's children, except John S., ever claiming any interest in it; that, in 1846, the said John S. was a minor, nineteen years old, working for himself.

The testimony then closed, and the Court charged and refused to charge the jury, as set forth hereinafter, and counsel for defendants excepted.

The jury rendered the following decree, to wit:

"We, the jury, find for the plaintiff, and decree that the sheriff's sale be set aside, and the deed be rendered up within thirty days; also that the bond be rendered up in thirty days, and both to be cancelled, and that the sheriff of Fayette county be directed to sell lot.of land number 141, in the seventh district of Fayette, and the proceeds of the same to be applied as follows: first, that Jesse Ward be paid the balance of the purchase money, say thirty-five dollars, with interest, the balance to be applied to this execution, after paying cost of suit."

Counsel for the defendants moved for a new trial in said case, on the following grounds:

1.  Because the decree in said case is contrary to law.

2.  Because said decree is contrary to the evidence and unsupported by the evidence.

3.  Because said decree is strongly and decidedly against the weight of evidence.

4.  Because said decree is too uncertain and indefinite in its terms to be enforced by any process of this Court.

5.  Because the Court erred in refusing to charge the jury, as requested by defendants' counsel, "that the parol agreement between Gainey Westbrook and Jesse Ward, at the sheriff's sale, as set forth in the complainant's bill, was void under the statute of frauds."

6.  Because the Court erred in refusing to charge without qualification, as requested by the defendants' coun-

sel, in writing, "that, if the jury believe from the evidence and from the allegations of the bill, that the complainant was a party to the claim case referred to in the bill, then he is bound and estopped by the judgment in said claim case."

7. Because the Court erred in charging the jury, "that the sayings or admissions of one defendant are not evidence against his co-defendant, *unless* it appears by other evidence that there was a conspiracy between them to carry out a fraud, or that they were joint participants in a fraud," and in refusing to charge, as requested by defendants' counsel, "that in this case the sayings of Ward are not evidence against · John S. Westbrook."

8. Because the Court erred in charging the jury: "That mere inadequacy of price is not a sufficient ground for setting aside a contract as fraudulent, unless the inadequacy is so gross as to shock the conscience."

9. Because the Court erred in using the following language to the jury, after recalling them for the purpose of giving a written charge, requested by defendants' counsel, and which the Judge had overlooked— "Gentlemen of the jury, I have recalled you for the purpose of giving a charge which I had omitted to give, requested by defendants' counsel; when a charge is requested in writing, the law requires me to give or refuse the charge, as requested; the defendants' counsel had handed me a, written request to charge, which I had overlooked on account of its getting covered up by some other papers, and to avoid any future trouble in this case, I have sent for you to charge you upon that subject"—then proceeding to give the charge set out in the sixth ground of this rule.

10. Because the Court erred in charging the jury—"That a *bona fide* purchaser for a valuable consideration is protected in equity, provided he purchases without notice of any fraud, and without knowledge of any circumstances that ought to excite the suspicions of a reasonably prudent man, but if he purchases with notice of the fraud, or with a knowledge of such circumstances as ought to excite the suspicions of a reasonably prudent man, he is not protected."

11. Because the charge of the Court was erroneous in whole and in all its parts.

The Court granted the rule *nisi* for a new trial, but upon the hearing of the same, discharged the rule and refused the new trial, and the writ of error in this case is prosecuted for the purpose of reversing that decision.

GLENN & COOPER, for the plaintiff in error.

TIDWELL & WOOTEN, for the defendants in error.

*By the Court.*—JENKINS, J., delivering the opinion.

The exceptions in this case go either to the charge of the Court, or to the verdict of the jury. I will consider the former first, from number five to number eleven, both included, though this inverts the order observed in the bill of exceptions.

I do not deem it necessary to review these exceptions *seriatim.* The fifth and sixth complain of refusals by the Court to charge, as requested by defendants' counsel.

We justify the refusals to charge, as requested, on the points embraced, because the charges asked were not pertinent to the issue, and would, almost certainly, have confused the jury, and diverted their attention from material to immaterial questions. We find no error in the charges positively given and excepted to.

The first, second and third exceptions assail the verdict of the jury as against law, against evidence, and as strongly and decidedly against the weight of evidence, and these we shall consider in connection.

We state the following proposition as the rule, which, in equity, should govern this case: If the evidence develop a conspiracy between Gainey Westbrook and Ward, to secure the land in dispute to the former, or to his family, against the just claims of his creditors, and if John S. Westbrook subsequently became a party to this conspiracy, then, both the deed to Ward and his bond for titles to John S. Westbrook, should be set aside to let in creditors.

The allegation in the bill is: That this property, having been levied on to satisfy a judgment against Gainey Westbrook, in the year 1843, was purchased by Ward at a very

inadequate price, at sheriff's sale, with an understanding that Ward should hold the land for the benefit of Westbrook; should permit him to reside upon and cultivate it, and that Westbrook should, as speedily as possible, refund to Ward the purchase money, with interest; that Westbrook continued to reside on said land to the time of his death, in 1854, and that his surviving family continued to reside on it down to the filing of the bill, in 1857; that Gainey Westbrook paid to Ward a part of the consideration money; that in the month of December, 1846, Ward executed to John S. Westbrook, a son of Gainey Westbrook, *then a minor,* his bond for titles to said land, conditioned to execute titles to the obligee upon the payment of eighty dollars, with interest; and that this was a device more effectually to carry into effect the original covinous agreement between Ward and Gainey Westbrook—John S. Westbrook being cognizant of the understanding. The bill also alleges that, previously to all these transactions, Gainey Westbrook had become the guardian of certain minors, named Warren, the defendant in error, Lamberth, being the security on his guardianship bond; that, as such guardian, Westbrook came to the possession of a sum of money, with a portion of which he had purchased the land in dispute; that suit had been instituted on that bond against Westbrook and defendant in error, as security thereon, judgment obtained and execution issued; that the plaintiffs had caused said execution to be levied on said land after the purchase by Ward, who had interposed a claim, on the trial of which the property was found not subject to the execution; that defendant in error had been compelled to satisfy said execution, as security; whereupon he filed this bill, praying that both the sheriff's deed to Ward, and Ward's bond for titles to John S. Westbrook, may be set aside, the land resold, and the proceeds applied, first, to the payment of the balance of purchase money due Ward, and the remainder to the reimbursement of himself, for the money paid as the security of Gainey Westbrook.

The answer of Ward explicitly denies the agreement with Gainey Westbrook, and all collusion and conspiracy; admits the receipt of money from Gainey Westbrook, but avers that it was received in payment of rent, due for the land in dispute, and avers that he had afterwards *bona fide* bargained and sold the land to John S. Westbrook. John S. West-

brook does not deny, but ignores, the original covinous agreement between his father and Ward, as alleged—avers that he was a *bona fide* purchaser, without notice, and denies all collusion and conspiracy.

No witness proves, of his own knowledge, the existence of the collusive àgreement between Gainey Westbrook and Ward. But the witness, Thomas J. Hood, testifies: That, subsequently to the execution of Ward's bond to John S. Westbrook, and before the commencement of this suit, Ward told witness, that "he, Ward, held the land in dispute; that he was holding it for the benefit of Gainey Westbrook and family; that Westbrook had paid all up but a small remnant, and that, when that was paid, he, Ward. intended to make a deed to the boys, so that it should be equally divided among them." Witness, further, testifies: That, on the same day, he communicated this conversation to John S. Westbrook, who "called upon witness to bear in mind the conversation and declarations of Ward, as there might, some day, be a lawsuit about it, and that he, Westbrook, believed Ward to be mean enough, at some future day, to try to defraud the children out of it." Tandy King testifies—"That, at different times, between the years 1852 and 1854, defendant, Ward, told witness that "he bought the land in dispute, at sheriff's sale; that some thirty or thirty-five dollars of the purchase money was still owing him, and that, if he could get the money due him, that he had advanced towards the land, and get back his bond for titles that he had given to some of the Westbrooks, he would make a deed." Wm. J. Russell testifies that, "about the year 1851, Gainey Westbrook and defendant, Ward, came to his office (he being clerk of the Superior Court) to inquire about a bill of costs, that had accrued in and about holding Westbrook's land (doubtless referring to the claim case mentioned in bill and answer), and that Ward told Westbrook, if he would pay the bill of costs, and twenty-five or thirty dollars attorney's fees, the land was his, Westbrook's, and he, Ward, would make a deed to any one for him.

This testimony of three witnesses certainly negatives the answer of Ward, and fully justifies the verdict, as to him.

But it is insisted that Ward's sayings are not evidence against John S. Westbrook, his co-defendant. The latter is certainly bound by the declarations of Ward to the witness,

Hood.  On being informed what those declarations were, he expresses no surprise, no dissent from them, but, on the contrary, by calling on the witness to bear them in mind, that he might thereafter, in a certain contingency, testify to them, Westbrook recognizes their truth, and adopts them as his own.  Now, these declarations of Ward in effect establish the original covinous agreement between Ward and Gainey Westbrook—partial repayment, by the latter to the former, of the purchase money—and Ward's intention upon being fully repaid, to make a title to Westbrook's *sons,* not to his *son, John S.*  John S. Westbrook's adoption of this declaration, coupled with the fear expressed by him, that Ward would, at a future day, attempt to defraud, *not himself,* but *"the children"* of Gainey Westbrook, contradicts so much of his answer as ignores the original agreement, and the partial repayment of the purchase money by Gainey Westbrook, also that portion which declares that he is a *bona fide* purchaser without notice.  It, in fact, proves that he became a party to this conspiracy to cover this property for the benefit of Gainey Westbrook and his family, of whom he was one.  But, it is said, this is at most the testimony of but one witness, whereas, the rule of evidence requires either two witnesses, or one and corroborating circumstances, to overcome a positive denial in the answer responsive to the bill.

Are there not corroborating circumstances?

1st. There is the continued residence of Gainey Westbrook on the land, to his death, and of his family subsequently.

2d. The relationship between himself and Gainey Westbrook.

3d. His minority at the time of the execution, and delivery of the bond for titles, by Ward to himself.

4th. The fact that, after the making of this bond, his father and Ward are found conferring together relative to the making of titles, not to John S., but to *"some one* for the father," and Ward is found demanding, not of John S., but of Gainey Westbrook, payment of costs, and of attorney's fees, accrued in the *holding* his, Westbrook's land, as preliminary to this making of titles.

It must not be overlooked that the defendant in error predicates his prayer for relief upon fraud, which he charges upon Gainey Westbrook and the plaintiffs in error, Ward and John S. Westbrook.  Mr. Justice Story, remarking upon

the different degrees of strictness in proof of fraud, required by Courts of Law and Courts of Equity, uses this language: "Courts of Equity will act upon circumstances, as presumptions of fraud, where Courts of Law would not always deem them sufficient proof to justify a verdict at law." And in this connection, he quotes with approbation the following rule, laid down by Lord Hardwicke, in *Chesterfield vs. Janssen—2 Vesey*, 155: " Fraud may be presumed from the circumstances and condition of the parties contracting: and this goes farther than the rule of law, which is: that fraud must be *proved*, not *presumed.*" 1 *Story's Equity*, §190.

This rule, applied to the position of John S. Westbrook, in this case, leaves him without a shadow of claim for protection.

We are of opinion that the evidence in the cause develops the state of facts embodied in the proposition with which we commenced an examination of this case on its merits, and that the verdict of the jury, setting aside the deed and bond, and letting in the creditors, should not be disturbed. We think, moreover, that there is in it no fatal vagueness or uncertainty, as alleged in the fifth exception.

## JUDGMENT.

Whereupon, it is considered and adjudged by the Court, that the judgment of the Court below be affirmed.