McDONALD v. HARDIN ET AL.

1. **Conveyance**: FRAUD: EVIDENCE. Evidence considered and held to
show that a grantee had no knowledge of the fraud by which his vendor
procured the conveyance to him of certain land.

*Appeal from Decatur District Court.*

THURSDAY, APRIL 7.

ACTION in chancery to set aside a deed of certain lands,
executed by plaintiff to defendant Lewis, on the ground that
it was procured by fraud. Hardin made default, and upon a
trial on the merits a decree was rendered granting the relief
prayed for in the petition. Defendant Lewis appeals.

*Rowell & Milligan*, for appellant.

*N. P. Bullock*, for appellee.

BECK, J.—I. The petition alleges that the defendants con-
spired together to cheat and defraud plaintiff, and, in pursu-
ance of the purpose of such conspiracy, defend-
ant Hardin, by falsehood and deceit, induced
plaintiff to enter into a written contract whereby he became
bound to convey to Hardin one hundred and twenty acres of
land situated in Decatur county in consideration of Hardin's
agreement to assign to plaintiff one-fourth interest in the
location of a division station upon the St. Louis & North-
western Railroad. The writing recites that the station shall
be located by a company having a capital of twelve thousand
dollars, and the power to control the location of the division
station, where shall be situated machine shops, round-houses,
etc. The agreement does not recite or show under what
authority Hardin assumed to possess the power to do the
things for which he bound himself in the contract, nor does

it show that he was an officer or agent of the railroad company, or attempted to bind it by the contract.

The petition avers that Hardin represented that he had the authority, to locate the round-house, machine shops, etc., and that the railroad company possessed the ability to build the road, which was sure to be completed; that all these representations were false and the project of constructing the railroad has failed, all of which was well known to defendants; that to carry out the fraudulent designs of defendants they caused a deed of the lands described in the contract to be made to defendant Lewis, who well knew that it was procured through false and fraudulent representations made by defendant Hardin. Other allegations of the petition need not be recited. The defendant Hardin failed to answer the petition, and default was entered against him. Lewis answered denying the allegations of the petition charging him with conspiracy, and averring that he had purchased the land in good faith for a sufficient consideration, without any knowledge of fraud, deceit or misrepresentation practiced by Hardin in the contract with plaintiff.

Lewis also alleges in his answer that he purchased the land of Hardin upon representations of plaintiff that he had sold the land to Hardin, and, although plaintiff had full knowledge of the negotiations between Lewis and Hardin touching the transfer of the land, he refused to make known to Lewis the nature of the transactions between plaintiff and Hardin, and he conveyed the land to Lewis upon the request of Hardin in order to vest Lewis with the title which Hardin had undertaken to convey to him.

II. The facts developed by the testimony may be briefly stated as follows: Hardin was engaged in working up a railroad project. A company was organized to build the road. It had officers and agents, but no money or other assets. Hardin was a director of the company and actively engaged in procuring taxes to be voted in aid of the project. Indeed it would appear that the operations of the company in Iowa

were almost wholly directed and controlled by him. Considerable work was done in grading the road. While Hardin was upon the high tide of his operations he induced plaintiff to enter into the contract for the conveyance of the land above referred to. That plaintiff was easily duped the terms of the contract which we have recited abundantly show, and that he was a victim of a sharper without conscience cannot be doubted. The contract was executed July 15th; on the 29th of the same month the deed was executed by plaintiff to Lewis.

The testimony very satisfactorily shows that Lewis did pay Hardin for the land. It is not important to inquire whether the amount paid was equal to the value of the land; we may admit that it was not.

We must now inquire whether Lewis was a party to the frauds of Hardin, or had knowledge of them at the time or before his purchase of the lands. We think the testimony fails to connect him with the transaction. Nor does the preponderance of the evidence show that he had any knowledge of the terms or character of the contract between plaintiff and Hardin. Plaintiff gives testimony tending to establish such a conclusion, but he is positively contradicted by Lewis, who is corroborated by at least one witness supporting Lewis' evidence by testifying to the effect that before the deed was made Lewis asked plaintiff the terms and condition of his contract with Hardin, but information was refused by plaintiff. Certain it is that plaintiff freely made the deed to Lewis without expressing any doubts or fears in regard to Hardin or his ability to peform his contract. He declares that Hardin informed him that Lewis was to hold the title to the land as one of the parties engaged in the enterprise of establishing the "division station." But there is not sufficient evidence to authorize the conclusion that Lewis had any knowledge of Hardin's purposes and plans.

At the time Lewis purchased the land and the deed therefor was made by plaintiff, Hardin was carrying on his en-

terprise with apparent prosperity, and had the confidence of the people that he would be successful. Plaintiff had confidence in him, and so had Lewis. This confidence in the swindler was the cause of the trouble. It induced plaintiff to enter into the contract and convey his lands; it prompted Lewis to purchase them. Plaintiff was a loser; Lewis lost nothing. We know of no reason why they should now change places.

Reaching the conclusions, which are satisfactorily supported by the testimony, that Lewis had no part in the deception and fraud of Hardin, and that he had no knowledge thereof, we base thereon our opinion that the decree of the District Court ought to be

REVERSED.