Judge Graham
delivered the opinion of the Court.
The complainants being judgment creditors of W. G» Bakewell, instituted, severally, a suit in chancery to set aside, as fraudulent, a conveyance of a lot of ground, No. 61, in Louisville, made by Bakewell to John Brand, by deed, dated 28th April, 1833, and a mortgage from Bakewell to Brand on another lot of ground, the mortgage being dated 10th January 1842, The deed was made without Brand’s knowledge, and it does not appear that he was apprised of its existence until a year after its date. It was, however, acknowledged before the Clerk, and recorded in the proper office in December 1833. On the 3d May, 1834, Bakewell wrote to Brand & Son a letter, in which he uses the following language: “ I leave for New Orleans this day. Lot No. 61, corner of Main and 10th streets, in this place, (Louisville,) is recorded in the name of John Brand, which, if my debts to your worthy and much esteemed family are all paid, and I should die, is to be held three years, and then transferred to my wife; if she is not living then, I wish it transferred to my brother, T. W. Bakewell. Having a snug little fortune besides this lot, I took the liberty of transferring it to my friend J. B., to have it entirely out df the reach of the casualties of mercantile life.” Bakewell made his contemplated trip* *207 'to New Orleans, and returned home. It is proved that on the 28th December, 1834, Bakewell again wrote to Brand, in which, after mentioning the deed for lot 61, sent by Edward McCallister, Esq., some time previous, he says: “I have since paid every debt I owed at that time, and I now, beg the favor of you, as life is uncertain with all of us, to mention this lot in your will, or so arrange it, that, in case we are taken by surprise, my wife will have this lot free and distinct from all my other concerns.” In answer to which letter, (the samé witness proves) that Brand, in a letter to Bakewell, dated 30th December, 1834, says: “With regard to the deed for lot No. 61, Main street, Louisville, I made a codicil to my will immediately on receiving it, to-wit: it is further my will and desire, that, whereas, a lot of ground situated in the city of Louisville, containing about half an acre, known by its number, -61, and corner of Main and Tenth streets in said city, which was deeded to me by my particular friend, W. G. Bakewell, Esq., and his wife Alicia, by deed, bearing date 28th April, 1833, as recorded in the Clerk’s office of Jefferson County Court; now it is my will and desire that the above named lot, with all the appurtenances, (at my death,) shall be deeded, in fee simple, ,to W. G. Bake-well’s wife Alicia,” &c. It is also proved that Mrs. Bakewell copied Bakewell’s last letter to Brand, and when Brand’s answer was received, she folded it up with the copy, and kept them in her possession.
Bakewell was the factor of Brand, and received, occasionally, bagging, rope, &c., for him and his son, and sold them. From the accounts between the parties, at the date of the deed, and at the dates of Bakewell’s letters, it does not appear, that at either of said dates, he owed J. Brand any thing. At the date of the deed, the account exhibited, shows that he owed Brand & Son about two thousand dollars. There were, however, running accounts between the parties. At the time of the mortgage in 1842, he appears to have been largely in debt to Brand. There is no evidence^ that Bakewell except as to Brand, or Brand & Son, was owing any *208 person at the date of the deed, or of the letters in De<¡ cember, 1834. He was a merchant, engaged in large business, and no doubt, at the date of the deed, and indeed at all times, owed some amount to persons with whom he had dealings, as is customary with most persons largely engaged with mercantile transactions; but it is proved by the uncontradicted and unimpeached testimony of several witnesses that at and before the date of the deed, in 1833, he was a wealthy merchant in fine credit; that he had estate to the value of from one hundred thousand to one hundred and eighty thousand dollars, and that he might safely, without any danger of imputation of fraud, have secured to his wife ten times the value of the lot conveyed to Brand. He continued in these prosperous circumstances until the years of 1841 and 1842, when he failed to a large amount. It is not shown at what time the liabilities accrued which caused his ultimate failure. The debt to Haskell was created in 1839, and the judgment which the Franklin Bank obtained against him, was in April 1843. The date of the transaction on which the judgment was had, is not stated in the record. It is proved that Bakewell, after this conveyance, listed the property for taxation, paid the taxes, rented out and received the rents of the property as his own, and, at one time, was about to erect a building on the lot. It is also proved, that at the time of Bakewell’s failure, he owned a large real estate in Louisville and Covington, and that his wife (trusting, as is said, no doubt truly, to her title to lot 61,) relinquished her right of dower in all said property, and thereby permitted the creditors to have the entire proceeds thereof. She is now dead, and died childless, and her heirs claim the lot 61.
Decree of the Chancellor.
The foregoing are substantially the facts of these two suits in chancery, which were consolidated and heard together. The Chancellor dismissed the bills without prejudice, and the complainants have brought the cases to this Court for revision.
One, who is not in debt, may convey to his wife, or other relative, á portion of his estate, and such convey *209 anee cannot be held as fraudulent, unless it was made with the intention of becoming indebted, and the object of the deed was to prevent the subjection of the property to the payment of such future debts. It is often regarded by persons engaged in hazardous pursuits, to be a sacred duty to wife and children, to set apart, by conveyance, for their use, a certain and reasonable portion of their estate, when they are free from the shackles of debt, and thereby to keep them somewhat secure from suffering the ills of poverty, to which those engaged in the trafic of buying and selling, seem to be peculiarly liable. If this object be carried out, freed from all fraudulent intents, it cannot be contemned. ' A deed for real estate, recorded in the office of the County Coui't, in which the land lies, is open to the inspection of all who think proper to examine the public records; and he who contemplates giving credit to another, on the faith of real estate, knows well where he may ascertain whether it in truth belongs to him to whom he is about to give credit. According to the evidence in this cause, Bakewell might not only in 1833, but for some years afterwards have conveyed this, and more valuable lots to a trustee for the benefit of his wife, and no one could have suspected him of any fraudulent design, nor could a subsequent creditor have successfully assailed such conveyance. Having attempted to effect the same object by a more circuitous and awkward mode, and to the object of his affections a more dangerous mode, ought'the transaction tobe now set aside because of his failure thus to convey, directly and immediately, to his wife, or to a trustee, for her benefit? Theinterest of his wife was in peril, until the reception of Brand’s letter in December 1834; but that letter gave that protection to the wife which the deed ought to have done, and which the husband intended should be done. When this letter was written and received, there is no proof that Bakewell then owed one cent to any human being; the deed was publicly recorded; any creditoi* could have seen it at any time. It is not pretended that these complainants, or others, gave him *210 credit because of lot No. 61. The facts that he paid the taxes, rented the property, and received the rents, do not militate against the claims of his wife or her heirs. If the property was beneficially hers, it was his duty, as husband, to attend to her interests, there being no intervening trustee to manage the estate for her. In view of the whole case, as presented in this record, it does seem to us, that no injustice has been done to the complainants ; that no fraud was contemplated in the transaction, and that this lot cannot be subjected to their demands.
One not indebted may settle property on his wife, if it be not done with the intent of going in debt.
Thruston Sp Pope for plaintiffs; Pirtle Sp Speed for defendants..
As to the mortgage, the, parties do not seem to have paid much attention to it. If the whole six thousand dollars secured by it, is not justly due to Brand,- the parties are not precluded from investigating the validity of that mortgage, if they think proper to do- so, inasmuch as their bills were not dismissed absolutely, but' are only “dismissed without pi’ejudice to any other suits for same causes.”
As we do not perceive any error in the decree of the-Chancellor, it is therefore affirmed.