PLATT, Assignee, etc., *v.* SCHREYER, Executor and Trustee, etc.[1]

(*Circuit Court, S. D. New York.* September 10, 1885.)

BANKRUPTCY—FRAUDULENT CONVEYANCE—EVIDENCE.

On review of the facts and evidence, *held*, that the transfers of the property in this case by the bankrupt to his wife were fraudulent as to his creditors, and should be set aside

Bill by Assignee to Set Aside Conveyance.

*T. M. Tyng*, for complainant.

*Wm. Lindsay* and *Frederic R. Coudert*, for defendant.

SHIPMAN, J. This is a bill in equity, in behalf of the assignee in bankruptcy of John Schreyer, to set aside the conveyances of Nos. 348 and 350 West Thirty-ninth street, and of Nos. 351, 353, and 355 West Forty-second street, in the city of New York, on the ground that the conveyances were made by the bankrupt to his wife, through the intervention of a third person, in fraud of the bankrupt's existing and subsequent creditors, and also to obtain two mortgages which were nominally made to the said wife, but which are alleged to have been and to be the property of the husband.

John Schreyer was a stair-builder, doing a large business in the city of New York from 1854 to February 15, 1876, when he ceased to work at his trade. Prior to 1871 he seems to have invested his profits in real estate, and on January 30, 1871, owned Nos. 351, 353, 355, West Forty-second street; 17, 19, 21, 23, West One Hundred and Twenty-sixth street; 348, 350, West Thirty-ninth street; 424 West Fortieth street; 135 East Seventy-eighth street; and 73 West One Hundred and Twenty-seventh street, all in the city of New York. The buildings on One Hundred and Twenty-sixth street cost $28,000. The value of the whole property was not proven, but was probably large. The Thirty-ninth and Forty-second street properties have rented for $10,000 or $12,000 per annum.

On said January 30, 1871, said John Schreyer conveyed, through Edward Sharkey, to his wife, Anna Maria Schreyer, all said estate except 135 East Seventy-eighth street and 73 West One Hundred and Twenty-seventh street. No. 135 East Seventy-eighth street was conveyed, through said Sharkey, by said John Schreyer to his said wife on February 11, 1871. On April 23, 1871, said John Schreyer conveyed 73 West One Hundred and Twenty-seventh street to Edward Sharkey, said Sharkey executing an instrument of trust by which he agreed to hold said property in trust for John and Anna Maria Schreyer. Subsequently said Sharkey died, and on May 29, 1873, William H. Leonard was appointed trustee, and was directed by decree of court to convey said lot to Anna Maria Schreyer, which was done July 25, 1873. By these various deeds John Schreyer conveyed

[1] See note at end of case.

to his wife all his real estate and all his property, except the machinery, tools, and appliances, and personal property belonging to his stair-building business, the accounts due him, and his balance in bank.

The only testimony in regard to the consideration for these conveyances, and the only oral testimony in regard to the pecuniary condition of John Schreyer, at the time they were made, comes from Schreyer himself. I am not favorably impressed with the truthfulness of his testimony. I disbelieve much of it; but, as he is the only witness, it is difficult to state with positiveness the exact line of demarkation between truth and misrepresentation. He and his wife were married in 1854. His theory is that at the time of their marriage she had $3,000 in money; that Nos. 348 and 350 West Thirty-ninth street, then known as Nos. 228 and 230, then belonged to the "Rapalyea Estate," and, as was also the case with other lands of said estate, were leased for a small annual rent to persons who built thereon small frame houses or shanties; that she bought for $1,000 the leasehold interest of the lessees in Nos. 228 and 230, rented a part of them, and thereafter collected the rents, which she loaned to her husband. They lived in a part of No. 228. That she loaned him also, soon after their marriage, $1,500, which he did not pay; that she took two of her husband's workmen to board, and loaned the board money to her husband; that in 1869, the lots Nos. 228 and 230 were sold by the Rapalyea estate to John Schreyer, and that he owed her, in round numbers, at that time—

| | |
|---|---:|
| The original capital, | $ 2,500 |
| Rents, | 10,000 |
| Board money, | 5,000 |
| | $17,500 |

That this money was equitably or legally due from the husband to the wife, and formed the nucleus of all the property which he owned in 1871, and that he thought it right to make over his property to her for the benefit of herself and their children. Nothing was due from the husband to the wife on account of the board money of the workmen who boarded in their family. This money and the rents were delivered to the husband, who deposited the same with his other moneys in his own name in bank, and used all said deposits alike.

If the statements in regard to the ownership and investment of $2,500 by the wife in 1854 are true, the course of dealing and of life between the parties show that there was no indebtedness in 1871 from husband to wife. The conveyances to her were voluntary and without any substantial pecuniary consideration. On January 30, 1871, John Schreyer was considerably indebted by mortgages upon his real estate. The amount did not appear. Mechanics' liens upon the West One Hundred Twenty-sixth street property to the amount of $12,437.65 were filed against said property, and against him as the owner thereof.

Most, if not all, of these liens were for unpaid work done by subcontractors for the principal contractors. At this time Schreyer was troubled and annoyed with these liens, some of which were for larger sums than were due. He thought, for some reason or other, that he would be better off, and that his existing creditors would be impeded, hindered, and delayed, if he placed his real estate in his wife's name, and he also made the conveyances with the purpose to defraud any future creditors whom he might have, and as a cover for future schemes of fraud. The conveyances were a sham and subterfuge, and his wife's ownership of these properties was a pretense. He managed and disposed of them after the conveyances, received the rents, deposited the same in his own name, and built houses in the same manner as before. He built houses in 1872 upon 348 and 350 West Thirty-ninth street, costing $20,000, with his own money. All said conveyances were made without substantial consideration, for the purpose of hindering, delaying, and impeding his existing creditors, and for the purpose of defrauding future creditors, and were fictitious, and known both to the grantor and grantee to be made merely for the purpose of giving her the nominal title, while the entire beneficial interest was to be and was retained by the grantor, so that future creditors might be defrauded.

In 1874 said John Schreyer, in the name of Anna M. Schreyer, agreed with George Gebhard and Matthew L. Ritchie to advance the money, and to build front houses upon the lots 420 and 422 West Fortieth street, which had been conveyed to said Gebhard and Ritchie, respectively, by said John Schreyer before 1871. The money was advanced by him, and the work was done under his direction, and, when the houses were finished, a mortgage on No. 420, dated July 17, 1874, to secure the sum of $7,750, the amount due said Schreyer by said Gebhard, was given to Anna M. Schreyer by said Gebhard and his wife; and on the same day a mortgage on No. 422 to secure the sum of $8,850, the amount due said John Schreyer by said Ritchie, was given to Anna M. Schreyer by said Ritchie and his wife. These two mortgages belonged to and were the property of John Schreyer, though nominally in the name of his wife, and were executed in the name of Anna M. Schreyer, in furtherance and in pursuance of the same scheme of fraud which was entered into in 1871. Peter J. Vanderbilt did the mason work upon these houses for the contract price of $8,175, in part payment of which he took an assignment of a bond and mortgage held by John Schreyer upon the 350 West Forty-second street property in the name of Anna M. Schreyer. John Schreyer became indebted to said Vanderbilt in the sum of $5,913.23, which indebtedness grew out of his said work upon said two houses.

Anna Maria Schreyer died on September 6, 1876, leaving a last will and testament, which was duly proved, admitted to probate, and recorded by the surrogate of the county of New York, and which is correctly set forth in the bill, by which she devised and bequeathed

all her estate to her husband, John Schreyer, in trust for their seven children, with power to manage said estate during his life, and to sell and convey the same. Said Schreyer continued thereafter in the management and possession of said property as before, collecting the rents and mingling them with his own funds, and has kept no accounts with the estate or with himself as executor or trustee, and has no record of his receipts and payments as executor or trustee, except that he has on paper the amounts received from rents, and he has the bills which he has paid.

On or about September 17, 1878, upon the petition of two pretended creditors of said Schreyer, which was filed August 23, 1878, he was adjudged, by his consent, a bankrupt by the district court for the Southern district of New York. He had on August 17, 1878, made a general assignment of all his property to Gustave A. Canis for the benefit of his creditors. Eight creditors proved debts amounting to $11,852.92, but all of them, except the estate of Peter J. Vanderbilt, claiming $5,913.23, have released and discharged the bankrupt since this action was commenced. Said creditors' petition was instituted for the benefit and at the instance of said Schreyer, for the purpose of preventing said Vanderbilt's estate from obtaining payment of said debt. The complainant became the assignee of said bankrupt on August 12, 1879. Nos. 348 and 350 West Thirty-ninth street, and 351, 353, and 355 West Forty-second street, are still nominally a part of the estate of Anna M. Schreyer. The real estate which was conveyed to her in 1871, by a scheme of fraud which was at that time entered into by her husband and herself, and which still remains nominally a part of her estate, should be devoted to the payment of his debts. The mortgages upon 420 and 422 West Fortieth street are still in the possession of said Schreyer as executor, and were his individual property when he was declared a bankrupt.

The point was made upon the hearing that the children of Anna M. Schreyer were necessary parties, and were not made parties. The case is within the forty-ninth equity rule, and there is nothing which calls upon the court to require that they should be made parties. The bill was vigorously defended by John Schreyer as trustee, and the interests of the children were as earnestly taken care of by the trustee as if they had been formally parties.

Let there be a decree that the said real and personal property, so held and possessed by said Schreyer as executor and trustee, be declared to have been vested in the complainant by operation of law, by virtue of his appointment as assignee in bankruptcy as aforesaid, and that said bankrupt, as such executor and trustee, be directed to convey and transfer the same to the complainant as assignee as aforesaid, and that said Schreyer be enjoined from collecting the rents and interest of said property.

## NOTE.

### *Fraudulent Transfer.*

1. Fraud. The statute of 13 Eliz. c. 5, which was made perpetual by 29 Eliz. c. 5, is the law which furnishes the basis of all remedies for fraudulent conveyances, (Bump, Fraud. Conv. 58,) and all our statutes on the subject are merely declaratory of the common law, or the statute of 13 Eliz. Farr v. Sims, Rich. Eq. Cas. (S. C.) 122, S. C. 24 Amer. Dec. 396

A fraud which will vitiate a sale must be mutual; that is, must be intended by both parties, or by one with a knowledge of such purpose on the part of the other, and thus acquiesced in and furthered. Horbach v. Hill, 5 Sup. Ct. Rep. 81; Mehlhop v. Pettibone, 11 N. W. Rep. 553.

It has been held that, to make a conveyance fraudulent, the fraudulent intent must be shown to have been shared by the grantor and grantee alike. Splawn v. Martin, 17 Ark. 146; Partelo v. Harris, 26 Conn. 480; Ewing v. Runkle, 20 Ill. 448; Meixsell v. Williamson, 35 Ill. 529; Hessing v. McCloskey, 37 Ill. 341, Fifield v. Gaston, 12 Iowa, 218; Steele v. Ward, 25 Iowa, 535; Violett v. Violett, 2 Dana, (Ky.) 323; Brown v. Force, 7 B. Mon. 357; Brown v. Smith, Id. 361; Harrison v. Phillips Academy, 12 Mass. 456; Bridge v. Eggleston, 14 Mass. 245–250; Foster v. Hall, 12 Pick. 89; Kittredge v. Sumner, 11 Pick. 50; Byrne v. Becker, 42 Mo. 264; Bancroft v. Blizzard, 13 Ohio 30; Union Bank v. Toomer, 2 Hill, (S. C.) Ch. 27; Weisiger v. Chisholm, 28 Tex. 780; Leach v. Francis, 41 Vt. 670; Governor v. Campbell, 17 Ala. 566; Magniac v. Thompson, Baldw. 344. Yet it has been held by our courts that a conveyance made to hinder, delay, or defraud creditors is void as to them, although founded on a full and valuable consideration, (Bozman v. Draughan, 3 Stew. Ala. 243; Rogers v. Evans, 3 Ind. 574; Ruffing v. Tilton, 12 Ind. 259, 264; Musselman v. Kent, 33 Ind. 452, 458; Lowry v. Howard, 35 Ind. 170; Poague v. Boyce, 6 J. J. Marsh. Ky. 70; Reed v. Carl, 11 Miss. [3 Smedes & M.] 74; Trotter v. Watson, 6 Humph. Tenn. 509; Peck v. Land, 2 Ga. 1; Chandler v. Von Roeder, 24 How. 224; Walcott v. Brander, 10 Tex. 419; Mills v. Howeth, 19 Tex. 257;) and that a deed fraudulent on the part of the grantor may be set aside, though the purchaser be a *bona fide* purchaser for value and ignorant of the fraud. Hildreth v. Sands, 2 Johns. Ch. 35; Gamble v. Johnson, 9 Mo. 605; Miller v. Tollison, 1 Harp. (S. C.) Eq. 145; Lee v. Figg, 37 Cal. 328. But this cannot be regarded either as the better doctrine or the prevailing law of the land.

Where a vendee participates in the fraud of the vendor to delay, hinder, or defraud the creditors of such vendor, even though a full consideration has been paid for the property, the conveyance will be set aside. Gardinier v. Otis, 13 Wis. 460; Briscoe v. Clarke, 1 Rand. 213; Tootle v. Dunn, 6 Neb. 93. This is a well-recognized principle of law, and courts have held that the purchaser is to be charged with notice of the character of the transaction when he is acquainted with the circumstances sufficiently to convince a court or jury that he knew the facts, (Green v. Tantum, 19 N. J. Eq. 105;) or, if he has a knowledge of such facts as would excite the suspicions of an ordinarily prudent man, and fails to make inquiry, and purchases from a fraudulent vendor, he is not a *bona fide* purchaser, or a purchaser in good faith, and will be charged with notice of any fraud upon creditors effected by the sale and transfer. State v. Estel, 6 Mo. App. 6.

The transfer, though fraudulent, cannot be complained of by a creditor who has not been injured thereby. Barnett v. Knight, 3 Pac. Rep. 747. And, in an action to set aside a fraudulent conveyance, the petition must set out and the proof show that the grantor had not sufficient property subject to the payment of his debts left for that purpose. Sherman v. Hogland, 54 Ind. 578; Zimmerman v. Fitch, 28 La. Ann. 454; Wiley v. Bradley, 67 Ind. 560.

Equity will not set aside a deed which complainant made to hinder, delay, and defraud creditors. Wier v. Day, 10 N. W. Rep. 304.

(1) *Definition.* In this connection fraud is unlawful conduct operating prejudicially to creditors' rights, (Bunn v. Ahl, 29 Pa. St. 387,) and consists in withdrawing from another that which is justly due him, or depriving him of his rights by deception and artifice. Burdick v. Post, 12 Barb. 168; S. C. 6 N. Y. 522. A fraud upon creditors is any act which, by intention, withdraws the property of the debtor from their reach. McKibbin v. Martin, 64 Pa. St. 352; Alabama Ins. Co. v. Pettway, 24 Ala. 544.

(2) *Evidence.* The question of fraud is one of fact, to be determined from all the facts and circumstances bearing upon the good faith of the transaction, (Knowlton v. Mish, 17 Fed. Rep. 198; Morse v. Riblet, 22 Fed. Rep. 501; Hills v. Stockwell & Darragh Furniture Co., 23 Fed. Rep. 432;) and a transfer may be held fraudulent, although no distinct fact proves it. McDaniels v. Perkins, 19 N. W. Rep. 902. But, as a rule, evidence of fraud, upon which a conveyance will be canceled, must be clear. Fick v. Mulholland, 4 N. W. Rep. 527; Le Saulnier v. Loew, 10 N. W. Rep. 145.

Insolvency of grantor is not, of itself, sufficient to show fraud. Leffel v. Schermerhorn, 14 N. W. Rep. 418. The acts and declarations of the vendor prior to the sale are

not sufficient to show knowledge of the fraudulent intent on the part of the vendee:
Bixby v. Carskaddon, 18 N. W. Rep. 875. The rule of evidence excluding the admissions or declarations of a party after he has parted with his interest in the subject-matter is said not to apply to fraudulent sales and conveyances. Carney v. Carney, 7 Baxt.
(Tenn.) 284. All admissions or declarations before sale are, of course, admissible in
evidence to show intent, (McLane v. Johnson, 43 Vt. 48; Edgell v. Lowell, 4 Vt. 405;)
but where such declarations are evidence of fraud on the part of the grantor, participation of the grantee must be shown by separate evidence. Eaton v. Cooper, 29 Vt. 444.
Relationship of the parties admissible, but does not invalidate the conveyance, unless
proof shows grantee knew of grantor's intent to defraud creditors. Adams v. Ryan, 17
N. W. Rep. 159.

(3) *Presumption.* Fraud will not be presumed where the facts are consistent with
honesty of purpose, (Clemens v. Brillhart, 22 N. W. Rep. 779,) but must be established
by evidence. Baughman v. Penn, 6 Pac. Rep. 890.

Fraud will be presumed, in courts of equity, from the circumstances of the parties. Ward v. Lamberth, 31 Ga. 150; Kendall v. Hughes, 7 B. Mon. 368; Pope v. Andrews, Smedes & M. Ch. 135; White v. Trotter, 22 Miss. 30; 14 Smedes & M.; King v.
Moon, 42 Mo. 551; Gallatian v. Cunningham, 8 Cow. 361; Booth v. Bunce, 33 N. Y.
139; Briscoe v. Bronaugh, 1 Tex. 326; Burch v. Smith, 15 Tex. 219, Chesterfield v.
Janssen, 2 Ves. Sr. 155; 1 Story, Eq. § 190. For a fraudulent intent is seldom susceptible of direct proof, but must be established, if at all, by a consideration of all the circumstances of the case. Blackman v. Wheaton, 13 Minn. 326, (Gil. 299;) Hicks v.
Stone, 13 Minn. 434, (Gil. 398;) Weisiger v. Chisholm, 28 Tex. 780; Craig v. Fowler,
13 N. W. Rep. 116.

In an action for fraudulent conveyance the grantee's relations to the grantor, and
his means of knowing the grantor's circumstances, and all connections with him, are
admissible in evidence. Stadtler v. Wood, 24 Tex. 622. But relationship does not invalidate a sale unless the proof shows that the grantee had knowledge, or should have
known, of grantor's intent to defraud his creditors. Adams v. Ryan, 17 N. W. Rep.
159. Where evidence tending to show the fraudulent character of the transfer to one
claiming to be a *bona fide* purchaser, and he remains silent, this is presumptive evidence
of fraud. Whitney v. Rose, 4 N. W. Rep. 557.

(4) *Burden of Proof.* Fraud must be proved by party who alleges. Craig v. Fowler,
13 N. W. Rep. 116; Eckert v. Pickel, 13 N. W. Rep. 708; Adams v. Ryan, 17 N. W.
Rep. 159; Clemens v. Brillhart, 22 N. W. Rep. 779; Morse v. Riblet, 22 Fed. Rep. 501;
Curry v. Lloyd, 22 Fed. Rep. 258. This may be done by facts and circumstances.
Craig v. Fowler, 13 N. W. Rep. 116. But, as against creditors, the wife must show by
preponderance of evidence that she is a *bona fide* purchaser for value. Kaiser v. Waggoner, 12 N. W. Rep. 754; Thompson v. Loenig, 14 N. W. Rep. 168. Burden of proof
is on grantee when it becomes necessary to establish the *bona fides* of the transaction.
Lane v. Starky, 18 N. W. Rep. 47. See Knight v. Kidder, 1 Atl. Rep. 142.

(5) *Secret Trust.* The reservation of a secret benefit, upon the execution of an absolute conveyance, does not necessarily render such conveyance fraudulent as to creditors. Howe Machine Co. v. Claybourn, 6 Fed. Rep. 438. See Lewin v. Hopping, 8
Pac. Rep. 73. But the land may be charged in equity with the benefit reserved. Id.
As a general rule, a conveyance in trust for the benefit of the grantor is fraudulent as
against existing creditors. Smith v. Conkwright, 8 N. W. Rep. 876.

(6) *Badges of Fraud.* It is said that kinship in any relation or any degree, in transactions under suspicious circumstances, is a badge of fraud, (Bump, Fraud. Conv. 96,
and cases cited;) but relationship of itself is not a badge of fraud, (Id.; Adams v. Ryan,
17 N. W. Rep. 159,) for business dealings between parents and children, or near relations, are to be treated as the transactions of other people, and if the *bona fides* thereof
be attacked, the fraud alleged must be proved. Curry v. Lloyd, 22 Fed. Rep. 258.

Possession after sale is a badge of fraud, although the conveyance is by absolute deed,
(Peck v. Land, 2 Ga. 1; Beers v. Dawson, 8 Ga. 556; Perkins v. Patten, 10 Ga. 241;) for
the law will not permit a debtor in failing circumstances to sell his land, convey it by
deed without reservations, and yet secretly reserve to himself the right to possess and
occupy it for a limited time for his own benefit. Lukins v. Aird, 6 Wall. 78; Wooten
v. Clark, 23 Miss. 75; Arthur v. Commercial & R. R. Bank, 9 Smedes & M. 394; Towle
v. Hoit, 14 N. H. 61; Paul v. Crooker, 8 N. H. 288; Smith v. Lowell, 6 N. H. 67.

The following acts are evidences of retention of possession, (Bump, Fraud. Conv.
90:) Renting, (Duvall v. Waters, 1 Bland, 569; Callan v. Statham, 23 How. 477;) collecting rents, (Sands v. Hildreth, 14 Johns. 493; S. C. 2 Johns. Ch. 35; Lee v. Hunter,
1 Paige, 519; Lewis v. Love's Heirs, 2 B. Mon. 345; Wisner v. Farnham, 2 Mich. 472;
Walcott v. Almy, 6 McLean, 23; How v. Camp, Walk. Ch. 427; Schaferman v. O'Brien,
28 Md. 565;) giving receipt for rent in his own name, (Duvall v. Waters, 1 Bland, 576;
Callan v. Statham, 23 How. 477;) directing the making of leases, (Schaferman v. O'Brien,
28 Md. 565;) making a sale of the land, even though acting under a power of attorney
from the grantee, (Starr v. Starr, 1 Ohio, 321; Gibbs v. Thompson, 7 Humph. 179; Star

ton v. Green, 34 Miss. 576; Glenn v. Glenn, 17 Iowa, 498;) selling timber. (Duvall v. Waters, 1 Bland, 569;) paying ground rent. (Schaferman v. O'Brien, 28 Md. 565;) paying taxes, (Stanton v. Green, 34 Miss. 576; Hunt v. Knox, 34 Miss. 655: Jacks v. Tunno, 3 Desaus. 1; Sands v. Codwise, 4 Johns. 536; Haskell v. Bakewell, 10 B. Mon. 206; Hutchison v. Kelly, 1 Rob. Va. 123;) making improvements, (Sands v. Hildreth, 14 Johns. 493; Merry v. Bostwick, 13 Ill. 398; Marshall v. Green, 24 Ark. 410; Gibbs v. Thompson, 7 Humph. 179; Tappan v. Butler, 7 Bosw. 480;) or driving the grantee off of the land, (Duvall v. Waters, 1 Bland, 569.)

Anything out of the usual course of business is a badge of fraud. An unusual mode of payment is also. So is unusual credit, or inadequacy of consideration. or false recitals, or concealments. or secrecy, or embarrassment. Duvall v. Waters, 1 Bland, 569; Tavenner v. Robinson, 2 Rob. Va. 280; Borland v. Walker, 7 Ala. 269; McRea v. Branch Bank of Ala. 19 How. 376; Hudgins v. Kemp, 20 How. 45; Callan v. Statham, 23 How. 477; Chapel v. Clapp, 29 Iowa, 191; Borland v. Mayo, 8 Ala. 104; Gibbs v. Thompson, 7 Humph. 179; Comstock v. Rayford, 12 Smedes & M. 369; Sayre v. Fredericks, 16 N. J. Eq. 205; Richards v. Swan, 7 Gill, 366; McNeal v. Glenn, 4 Md. 87; Jackson v. Mather, 7 Cow. 301; Merrill v. Locke, 41 N. H. 486.

2. VOLUNTARY CONVEYANCE. A voluntary conveyance, without consideration, will vest an absolute title in the grantee, subject only to the rights of creditors, (Atwater v. Seely, 2 Fed. Rep. 133;) for such conveyances are good as between the parties, and void only when they hinder, delay, or defraud creditors. Elwell v. Walker, 3 N. W. Rep. 64. Where sufficient property is left in the hands of the debtor, subject to execution, to pay the claims of existing creditors, such conveyance is valid even as against them. Providence Savings Bank v. Huntington, 10 Fed. Rep. 871; Emery v. Yount, 1 Pac. Rep. 686. But a voluntary conveyance by one largely indebted in comparison with his resources is *prima facie* fraudulent. Vertner v. Humphreys, 22 Miss. (14 Smedes & M.) 130; Baker v. Welch, 4 Mo. 484; Crumbaugh v. Kugler, 2 Ohio St. 373; Gruder v. Bowles, 1 Brev. (S. C.) 266.

(1) *Presumption of Acceptance.* In the absence of direct testimony the acceptance of the grant will be presumed, after the expiration of four years, where the grantee held, owned, controlled, and managed the property from the time of the conveyance, and the only occupants were his tenants, and for his sole and exclusive use. Herring v. Richards, 3 Fed. Rep. 439.

(2) *To Wife.* Transactions between husband and wife in regard to the transfer of property from him to her, by reason of which creditors are prevented from collecting their just dues, will be scrutinized very closely, and it must clearly appear that such transfer was made in good faith and for value. First Nat. Bank of Omaha v. Bartlett, 1 N. W. Rep. 199. Fraud will be presumed where a voluntary conveyance to the wife is followed within a short time by a fraudulent disposition of the remaining estate of the grantor, (Burdick v. Gill, 7 Fed. Rep. 668,) and will be void as to subsequent creditors. Id. A voluntary conveyance by the husband to the wife of a valuable estate is *prima facie* fraudulent as to then existing creditors, (Wiswell v. Jarvis, 9 Fed. Rep. 84; Boulton v. Hahn, 12 N. W. Rep. 560,) and the burden of proof is on the wife to show the good faith of the transaction. Kaiser v. Waggoner, 12 N. W. Rep. 751; Thompson v. Loenig, 14 N. W. Rep. 168. But a voluntary conveyance to the wife is valid where made in good faith, and the husband retains property sufficient to pay his debts. Stephenson v Cook, 20 N. W. Rep. 182; State v. Wallace, 24 N. W. Rep. 609.

A husband may, in good faith, make a gift to his wife when he is not owing anything. Tootle v. Coldwell, 1 Pac. Rep. 329. May at any time make a gift to her of exempt property, when he does so in good faith. Robb v. Brewer, 15 N. W. Rep. 420. But a transfer of property to the wife to preserve it from execution will, of course, be fraudulent. Hendershott v. Henry, 19 N. W. Rep. 665. As a general rule, a conveyance from husband to his wife will be effectual as against creditors, unless it was executed with intent to hinder or delay them, or unless the grantee has done some act which estops her to assert it as against them. Wheeler & Wilson Manuf'g Co. v. Monahan, 23 N. W. Rep. 127.

A voluntary conveyance by a husband to his wife in fraud of the grantor's creditors is valid as to subsequent creditors with notice. In re May, 2 Fed. Rep. 845. It is held that a conveyance to the wife, as to subsequent creditors, although the husband be embarrassed at the time of its execution, is not fraudulent *per se* as to them, and the fact whether it is or not is to be determined from all the circumstances, and the fact of indebtedness is never conclusive of fraud. Wallace v. Penfield, 1 Sup. Ct. Rep. 216.

Where a voluntary conveyance of real property by a husband to his wife, through a third person, leaves him unable to pay his debts, it is fraudulent. Collinson v. Jackson. 14 Fed. Rep. 305. Otherwise where such conveyance does not affect creditors. Metsker v. Bonebrake, 2 Sup. Ct. Rep. 351. Conveyance to a wife of lands by a person buying them from her husband on execution is not fraudulent. Allen v. Allen, 10 N. W. Rep. 113.

A conveyance made to a wife for a valuable consideration paid by the husband will be upheld as against a creditor of the husband, whose demand accrued before such conveyance, where the conveyance was procured and made without fraudulent intent. Reich v. Reich, 1 N. W. Rep. 804. And where such a conveyance is procured to be made in good faith, and intended as an absolute gift, or post-nuptial settlement. it is good as against subsequent creditors, (U. S. v. Griswold, 8 Fed. Rep. 556;) but it must, to support the conveyance made after marriage, as against creditors, be in writing. Elwell v. Walker, 3 N. W. Rep. 64. A conveyance to the wife procured by the husband upon a consideration moving from himself, and which appears from the evidence to be a mere device or contrivance to put the husband's property in his wife's name, and beyond the reach of creditors or the contingencies of business, while he remains in the actual possession, control, and enjoyment of the same, as though the legal title was in himself, the wife will be held to be the trustee for her husband, and such property subjected to the payment of his debts. Elwell v. Walker, 3 N. W. Rep. 64. Where a judgment creditor seeks to set aside conveyance to wife, upon consideration moving from husband, on the ground that it is fraudulent upon creditors, and the defense is set up that the conveyance was made prior to contracting the debt sued upon, the burden of proof is on defendant. Knight v. Kidder, 1 Atl. Rep. 142.

Where a man bought certain lands, the consideration being the discharge of certain indebtedness held by him, and took the title in his wife's name without her knowledge. it was held fraudulent as to former creditors. Gear v. Schrei, 11 N. W. Rep. 625. And where a husband deeded land to a creditor in payment of a demand held against him, and such creditor reconveyed a part of such land to the wife in consideration of her signing her husband's deed, it was held to be a fraud upon the other creditors. Haynes v. Kline, 20 N. W. Rep. 453.

A husband actually indebted to his wife may, if acting in good faith, convey to her property not exempt in payment thereof, and other debtors cannot complain that such indebtedness, or a part thereof, was barred by the statute of limitations, had the debtor seen fit to assert such defense. Brigham v. Fawcett, 4 N. W. Rep. 272; Jones v. Brandt, 10 N. W. Rep. 854; Jones v. Brandt, 13 N. W. Rep. 310. And where the title to land purchased with wife's money was taken in husband's name, he may deed same to her. Bennet v. Strait, 19 N. W. Rep. 806. But he cannot convey to his wife without consideration, in fraud of interest of creditors, property earned by their joint labors, but standing in his name. Langford v. Thurlby, 14 N. W. Rep. 135.

A wife cannot allow her husband to use and appropriate her property as his own for years, and incorporate a part of his own means into it, and then, upon a conveyance of the whole from her husband, make valid claim to it as against his creditors. Moyer v. Adams, 2 Fed. Rep. 182. For a husband is not allowed to return, to the injury of his creditors, money given him by his wife to be used in his business, unless a loan. Bailey v. Kansas Manuf'g Co., 3 Pac. Rep. 756.

Where a wife had made advances to her husband from time to time by way of loan and not of gift, the subsequent conveyance of land through a third person to her, in repayment of such loans, and not made with the purpose of hindering, delaying, or defrauding creditors, but to satisfy his equitable obligations to his wife, is not a voluntary conveyance, and is valid as against creditors. Metsker v. Bonebrake, 2 Sup. Ct. Rep. 351. But even where a conveyance is made by the husband to the wife for a valuable consideration, yet with the intent to hinder and delay creditors, and this fact was known to the wife, it is fraudulent. Collinson v. Jackson, 14 Fed. Rep. 305.

(3) *To Children.* A voluntary conveyance from a parent to his children, by way of settlement, while solvent and free from debt, and not disproportionate to his means, will be sustained, as against subsequent creditors, in the absence of fraud. Herring v. Richards, 3 Fed. Rep. 439. Where a parent makes a voluntary conveyance of real estate to his children, and makes subsequent contributions of money to pay off incumbrances and improve the property, this will not render such conveyance void. Id. And where a banker, at the time entirely free from pecuniary embarrassment, and apparently possessed of abundant means of his own, without fraudulent or wrongful intent, voluntarily erected a dwelling-house upon his son's land without request of the son, who innocently acquiesced in the gratuitous act of the father, believing him to be a man of wealth, and shortly thereafter the father was compelled to suspend business by reason of a general financial panic, and was adjudged a bankrupt, it was held that the voluntary expenditure so made by the father was not a ground for charging the son or his land. Curry v. Lloyd, 22 Fed. Rep. 258.

A conveyance by a parent to his children of real estate, in pursuance of a former agreement, in consideration of their remaining with and working for him during their nonage, will not be upheld as against creditors existing at the time, because their services were not a valuable consideration, being only such services as in law they were bound to render. Dowell v. Applegate, 15 Fed. Rep. 419; Stearns v. Gage, 79 N. Y. 102; Updike v. Titus, 13 N. J. Eq. 151; King v. Malone, 31 Grat. 158; Hack v. Stewart, 8 Pa. St. 213; Sanders v. Wagonseller, 19 Pa. St. 248; Miller v. Sauerbier, 30 N. J. Eq. 71; Bart-

lett v. Mercer, 8 Ben. 439; Guffin v. First Nat. Bank, 74 Ill. 259; Hart v. Flinn, 36 Iowa, 366; Zerbe v. Miller, 16 Pa. St. 488; Van Wyck v. Seward, 18 Wend. 375. However, a conveyance to a grandchild under such a promise, and the rendering of such services, will be upheld as a conveyance for a valuable consideration, and good as against the claims of creditors. Dowell v. Applegate, 15 Fed. Rep. 419.

And where there is an express contract to pay wages to son, where he remains with and works for parent after he becomes of age, a transfer to son in liquidation of indebtedness thus created will be upheld. Byrnes v. Clark, 14 N. W. Rep. 815. For parents have a right, as against creditors, to compensate children for their services in supporting them. Howard v. Rynearson, 15 N. W. Rep. 486. And conveyances to compensate for past services, made in good faith, will be upheld. Collier v. French, 21 N. W. Rep. 90. But where a son, after he had attained majority, continued for a few years to live with his father, support him, and to labor on the farm as he had previously done, no express contract as to the payment of wages by the father for the services of the son being proved to exist between them, it was held that the father could not, after he became indebted and insolvent, convey to him real estate in payment for the services rendered by him since attaining his majority. Hack v. Stewart, 8 Pa. St. 213. Same was held in the case of a daughter, where the alleged consideration was a cow given to the daughter by her grandfather, and the cow and increase kept by the parent, and for services performed by her while in the family after attaining her majority. Hart v. Flinn, 36 Iowa, 366.

A conveyance by parent to a child of property in payment of note due is, of course, valid. Howard v. Rynearson, 15 N. W. Rep. 486. And it will not be fraudulent when made without consideration, but in good faith, before the debt was contracted, even though the parent kept the custody of the land and managed it for his daughter. Dunham v. Pitkin, 19 N. W. Rep. 166.

Conveyance by a parent largely indebted of his property, or a part thereof, for a small sum down, and notes for the balance, unsecured, or when the consideration is the assumption of a mortgage on the property simply, will be held to be fraudulent. Star Wagon Co. v. Maurer, 5 N. W. Rep. 576; Knowlton v. Hawes, 7 N. W. Rep. 286, Dickerman v. Farrell, 13 N. W. Rep. 422; Lyon v. Haddock, Id. 737.

But where a parent is in debt, and makes a voluntary conveyance to his child, or children, with a view of insolvency, or intending that the property shall be held in secret trust for himself, or that the conveyance shall hinder, delay, or defraud creditors, such conveyance is void. Godell v. Taylor, Wright, (Ohio,) 82; Carlisle v. Rich, 8 N. H. 44; Pepper v. Carter, 11 Mo. 540; Henry v. Fullerton, 13 Smedes & M. 631; Wells v. Treadwell, 28 Miss. 717; Marston v. Marston, 54 Me. 476; Atkinson v. Phillips, 1 Md. Ch. 507; Clayton v. Brown, 17 Ga. 217; Mixell v. Lutz, 34 Ill. 382; Miller v. Thomson, 3 Port. (Ala.) 196; Gardner v. Boothe, 31 Ala. 186; Benton v. Jones, 8 Conn. 186; Clayton v. Brown, 17 Ga. 217; Sheppard v. Iverson, 12 Ala. 97; Parish v. Murphree, 13 How. 92; Jones v. Slubey, 5 Har. & J. 372; Kissam v. Edmonston, 1 Ired. Eq. 180; Ringgold v. Waggoner, 14 Ark. 69; Swartz v. Hazlett, 8 Cal. 118; New Haven Steam. Co. v. Vanderbilt, 16 Conn. 420; Stewart v. Rogers, 25 Iowa, 395; Brady v. Briscoe, 2 J. J. Marsh. 212; Rucker v. Abell, 8 B. Mon. 566; Birdsale v. Lakey, 6 La. Ann. 647; Rousseau v. Lum, 9 La. Ann. 325; Hoye v. Penn, 1 Bland, Ch. 28; Worthington v. Shipley, 5 Gill, 449; Bullett v. Worthington, 3 Md. Ch. 99; Brice v. Myers, 5 Ohio, 121; Croft v. Arthur, 3 Desaus. (S. C.) 223; Chamberlayne v. Temple, 2 Rand. (Va.) 384; Coleman v. Cocke, 6 Rand. (Va.) 618; Amy v. Young, 15 N. H. 522; Seward v. Jackson, 8 Cow. 406; Robinson v. Stewart, 10 N. Y. 189; Tripp v. Childs, 14 Barb. 85; Pell v. Tredwell, 5 Wend. 661; Sterry v. Arden, 1 Johns. Ch. 261; Waller v. Mills, 3 Dev. Law, 515; Jessup v. Johnston, 3 Jones, Law, 335; Smith v. Reavis, 7 Ired. Law. 341; Morgan v. McLelland, 3 Dev. Law, 82; O'Daniel v. Crawford, 4 Dev. Law, 197; Winchester v. Reid. 8 Jones, Law, 377; McGill v. Harman, 2 Jones, Eq. 179; Brown v. Godsey, Id. 417; McKimmon v. Rogers, 3 Jones, Eq. 200; Edgington v. Williams, Wright, (Ohio,) 439; Geiger v. Welsh, 1 Rawle, 349; Miner v. Warner, 2 Grant, Cas. 448; Johnston v. Harvy, 2 Pen. & W. 82; Nicholas v. Ward, 1 Head, 323; Hamilton v. Bradley, 5 Hayw. (Tenn.) 127; Dillard v. Dillard, 3 Humph. 41; Martin v. Olliver, 9 Humph. 561; Redfield v. Buck, 35 Conn. 328; Chase v. McCay, 21 La. Ann. 195; Grimes v. Russell, 45 Mo. 431.

The same is true where the conveyance is not directly from the father to the child, but from vendor to child, the father paying the purchase money therefor. Doe v. McKinney, 5 Ala. 719; Patterson v. Campbell, 9 Ala. 933; Elliott v. Horn, 10 Ala. 348; Godell v. Taylor, Wright, (Ohio,) 82; State Bank v. Harrow, 26 Iowa, 426; Ewell, Lead. Cas. 75. The same is true where the son takes the property and agrees to pay the parent's debts. Star Wagon Co. v. Maurer, 5 N. W. Rep. 576; Swihart v. Shaum, 24 Ohio St. 432; Brady v. Briscoe, 2 J. J. Marsh. 212; Robinson v. Stewart, 10 N. Y. 189. See Pattison v. Stewart, 6 Watts & S. 72; Preston v. Jones, 50 Pa. St. 54.

A mother's conveyance of her property to her children, just prior to her second marriage, is said to be a fraud upon the second husband. Black v. Jones, 1 A. K. Marsh. 312; Petty v. Petty, 4 B. Mon. 215. See Ramsay v. Joyce, McMull. Ch. 236; Manes v. Durant, 2 Rich. Eq. 404. But a father's conveyance of all his personalty to his chil-

dren by a former wife is held not to be a fraud on the rights of the second wife. Cameron v. Cameron, 10 Smedes & M. 394.

A marriage contracted by a child in consideration of a conveyance is a valuable consideration and will sustain the transfer. Verplank v. Sterry, 12 Johns. 536; Sterry v. Arden, 1 Johns. Ch. 261; Wood v. Jackson, 8 Wend. 9; Whelan v. Whelan, 3 Cow. 537; Mills v. Morris, 1 Hoff. 419. But this rule does not apply where a voluntary conveyance is made to a child who afterwards marries, and the father continues in possession, contracting debts and dying insolvent, so as to enable the child to hold the property as against his creditors. O'Brien v. Coulter, 2 Blackf. 421. See Stokes v. Jones, 18 Ala. 734.

3. Bona Fide Purchaser. A *bona fide* purchaser of the legal title, without notice of fraudulent intent of grantor, or outstanding equities, will be protected, (Butler v. Douglass, 3 Fed. Rep. 612: Paddock v. Fish, 10 Fed. Rep. 125; Latham v. Barney, 14 Fed, Rep. 433; Scheble v. Jordan, 1 Pac. Rep. 121; Farlin v. Sook, 1 Pac. Rep. 123;) otherwise, however, if he gets no legal title, (Butler v. Douglass, 3 Fed. Rep. 612: Latham v. Barney, 14 Fed. Rep. 433;) for fraudulent intent of the grantor cannot affect a *bona fide* purchaser for value without notice. Howe Machine Co. v. Claybourn, 6 Fed. Rep. 438; McDonald v. Hardin, 8 N. W. Rep. 473; Zoeller v. Riley, 2 N. E. Rep. 388. But a *bona fide* purchaser from a fraudulent grantee, without notice of the fraud, is liable to any of such creditors for any portion of the purchase money remaining unpaid after notice of the fraud, and a court of equity will give the creditor a lien upon the premises for that amount. Dowell v. Applegate, 7 Fed. Rep. 881.

To constitute a *bona fide* purchaser for a valuable consideration the sale must be made without notice, and with the money actually paid. Savage v. Hazard, 9 N. W. Rep. 83. For where the grantee in a deed made to defraud the creditors of the grantor knows of such fraudulent intent, or has knowledge of facts sufficient to excite the suspicions of a prudent man and put him on inquiry, he makes himself a party to the fraud. Bartles v. Gibson, 17 Fed. Rep. 293. Actual knowledge on part of vendee of fraudulent intent of vendor is not necessary to render sale void. If facts brought to his attention are such as to awaken suspicion, and lead a man of ordinary prudence to make inquiry, he is chargeable with notice, and with participation in the fraud. Gollober v. Martin, 6 Pac. Rep. 267. But to render fraudulent, the purchaser must have notice of facts sufficient to put an ordinary man on his guard. Temple v. Smith, 14 N. W. Rep. 527.

A conveyance made in consideration of future support, where grantee acts in good faith, and the greater part being valuable and actually paid, will not render fraudulent. Barnett v. Knight, 3 Pac. Rep. 747. But ordinarily a voluntary transfer of property by an insolvent debtor by gift, or upon the consideration of a promised future support of the grantor, necessarily tends to delay the just claims of his creditors, and is *prima facie* evidence of a fraudulent intent. Tupper v. Thompson, 4 N. W. Rep. 621; Rynearson v. Turner, 17 N. W. Rep. 219; Graham v. Rooney, 42 Iowa, 567; Guffin v. First Nat. Bank, 74 Ill. 259.

Where a grantee takes land and agrees to pay an incumbrance thereon, which is much less than the value of the land, this will not prevent the conveyance from being of a voluntary character, so far as relates to the mortgagor's remaining interest in the land. First Nat. Bank v. Bertschy, 9 N. W. Rep. 534.

4. Intent. To make the transfer fraudulent there must be an intent to defraud, and an act which will actually defraud creditors by hindering, delaying, or preventing the collection of their claims. Baldwin v. O'Laughlin, 11 N. W. Rep. 77. The fraudulent intent must be alleged in the petition and proven on the trial. Thompson v. Jackson, 3 Rand. 504. The fraudulent act must be clearly made out; it will not, as a rule, be presumed, (Grover v. Grover, 3 Md. Ch. 29; Weisiger v. Chisholm, 28 Tex. 780; Bridgeford v. Simonds, 18 La. Ann. 121; Tomlinson v. Payne, 8 Jones, Law, 108; Lyman v. Cessford, 15 Iowa, 229; Wright v. Grover, 27 Ill. 426; Stiles v. Lightfoot, 26 Ala. 443,) or inferred from slight evidence, but is a conclusion drawn from all the circumstances surrounding the case and the parties. Hollister v. Loud, 2 Mich. 309; Colquitt v. Thomas, 8 Ga. 258; Gardiner v. Gerrish, 23 Me. 46; Hamilton v. Beall, 2 Har. & J. 414; Baldwin v. Buckland, 11 Mich. 389; Parkhurst v. McGraw, 24 Miss. 134; Jones v. Emery, 40 N. H. 348; Forsyth v. Matthews, 14 Pa. St. 100.

Intent may be shown by acts and declarations before sale. Edgell v. Lowell, 4 Vt. 405; McLane v. Johnson, 43 Vt. 48. Nothing but intent to defraud creditors generally will render transfer voidable. Allen v. Bullock, 1 N. W. Rep. 863; Burgin v. Burgin, 1 Ired. Law, 453. The intent must be to "defraud, hinder, or delay creditors," or it does not fall within the statute of 13 Eliz. c. 5. An intent to deceive or defraud, or hinder or delay, the public, has been held not to be within the statute. Griffin v. Stoddard, 12 Ala. 783.

The term "hinder and delay" relates merely to time, but has reference also to the interposition of obstacles with the fraudulent intent to hinder and delay. Linn v. Wright, 18 Tex. 317; Hefner v. Metcalf, 1 Head, 577. The statute implies two acts: to

"hinder or delay," and to "defraud," creditors. The mere intent to defraud is said to vitiate a transfer. Pilling v. Otis, 13 Wis. 495; Planck v. Schermerhorn, 3 Barb. Ch. 614; Sutton v. Hanford, 11 Mich. 513; Davenport v. Cummings, 15 Iowa, 219; Burt v. Mc-Kinstry, 4 Minn. 204, (Gil. 146.) There is something of a more vicious nature implied by the word "fraud" than by the term "hinder and delay." "Hinder" and "delay" are synonyms—mere pleonasms introduced out of the abundance of precaution. Read v. Worthington, 9 Bosw. 617; Burdick v. Post, 12 Barb. 168; S. C. 6 N. Y. 522.

Only such hinderance and delay as operates as a fraud comes within the statute. Hoffman v. Mackall, 5 Ohio St. 124. Thus an assignment for the benefit of creditors is not within the statute. Pickstock v. Lyster, 3 Maule & S. 371; Meux v. Howell, 4 East, 1; Wilder v. Winne, 6 Cow. 284; S. C. 4 Wend. 100. The duration of the hinderance or delay has nothing to do with the matter. Quarles v. Kerr, 14 Grat. 48; Sutton v. Hanford, 11 Mich. 513. It has been held, and that justly, that creditors have as much right to receive their bills when due as they have to receive them at all. Nicholson v. Leavitt, 6 N. Y. 510; S. C. 10 N. Y. 591; 4 Sandf. 253. A man may secure another who is his creditor, and thus make him a preferred creditor. Holbird v. Anderson, 5 Term R. 235; Wood v. Dixie, 53 E. C. L. 892; S. C. 7 Q. B. 892; Darvill v. Terry, 6 Hurl. & N. 807; Hall v. Arnold, 15 Barb. 599; Hartshorn v. Eames, 31 Me. 93; Gassett v. Wilson, 3 Fla. 235; Wheaton v. Neville, 19 Cal. 41. Or he may assign for the benefit of all his creditors. Riches v. Evans, 9 Car. & P. 640; Johnson v. Osenton, L. R. 4 Exch. 107; Wilt v. Franklin, 1 Bin. 502; Jackson v. Cornell, 1 Sandf. Ch. 348; Horwitz v. Ellinger, 31 Md. 492. The last, while it operates to delay creditors, yet it is not tinctured with fraudulent intent, and will be upheld by the courts.

Frauds are of two kinds: *First,* where the instrument itself makes the transaction fraudulent; this is called fraud in law or constructive fraud, (Lukins v. Aird, 6 Wall. 78;) and, *second,* an act that hinders, delays, or defrauds creditors, and which is conceived, "devised, and contrived of malice, covin, collusion, or guile;" and where the intent is marked by these characters, or any of them, it is a fraud in fact. Ewing v. Runkle, 20 Ill. 448; Meux v. Howell, 4 East, 1. The presence of the intent is a very necessary element. Sibly v. Hood, 3 Mo. 290. A legal and not a moral intent is referred to. Parties may do what they consider perfectly fair to prevent a sacrifice, with the intention of paying all their debts ultimately, or may be actuated purely by motives of compassion or affection, and yet be guilty of gross fraud upon creditors, (Sturdivant v. Davis, 9 Ired. Law, 365; Gardiner Bank v. Wheaton, 8 Me. 373; Briggs v. Mitchell, 60 Barb. 288; Trimble v. Turner, 13 Smedes & M. 348; Flood v. Prettyman, 24 Ill. 597,) if the tendency of such act and its legitimate effect are to defeat or delay creditors. Enders v. Swayne, 8 Dana, 103.

Constructive fraud is a question of law; fraud in fact is a question of evidence, usually, (Evans v. Rugee, 23 N. W. Rep. 24; Trowbridge v. Sickler, 11 N. W. Rep. 581; Sweet v. Wright, 17 N. W. Rep. 468; Howe Machine Co. v. Claybourn, 6 Fed. Rep. 438;) and when intent is material, party may testify as to what his intent was, (Frost v. Rosecrans, 23 N. W. Rep. 895;) but where there is no dispute as to the facts, it is purely a question of law.

The mere intent to prevent a sacrifice of his property on the part of the debtor is not within the statute of frauds, (Murray v. Cason, 15 Mo. 378,) but a transfer of property, without consideration, to the wife to *preserve* it from execution, is, (Hendershott v. Henry, 19 N. W. Rep. 665;) and where this intent is coupled with the requisite delay or hinderance, or defrauding creditors, it rises to the dignity of a fraudulent transaction, because a fraud in law. Brown v. Osgood, 25 Me. 505; Borland v. Mayo, 8 Ala. 104.

(1) *Presumptions as to Intent.* Fraudulent intent presumed only when the interests of a third party may be injuriously affected by it. Kerrick v. Mitchell, 24 N. W. Rep. 151. But a party is conclusively presumed to have intended fraud, if fraud logically result from his conduct, (Hilliard v. Cagle, 46 Miss. 309;) for every man is presumed, in the legal as well as the moral world, to intend the natural consequences of his acts. Gollober v. Martin, 6 Pac. Rep. 267; People v. Langton, 7 Pac. Rep. 843; Gillet v. Phelps, 12 Wis. 392. When the intent with which an act was done is the gist of the action, the presumption is that every sane man contemplates and intends the necessary, natural, and probable consequences of his acts. People v. Sweeney, 22 N. W. Rep. 50. If one intends to do that which he is conscious the law forbids, no other evil intent need be shown. U. S. v. Houghton, 14 Fed. Rep. 544. But wrong intent must be followed by a wicked act, to fall under the ban of the law. Id. When the proof shows that an unlawful act was done, the law presumes the intent, and a proof of the act being a violation of law is proof of the intent. U. S. v. Baldridge, 11 Fed. Rep. 552. And where the conduct of a debtor necessarily results in defrauding his creditors, he is presumed to have foreseen and intended such result. Gollober v. Martin, 6 Pac. Rep. 267.

Circumstances will be considered in connection with a coincidence in the date of an alleged fraudulent conveyance with the time of falling due of claims of a creditor or creditors. Gebhart v. Merfeld, 51 Md. 322. If a fraudulent intent can or must be inferred from all the circumstances of the case, the conveyance will be held to be fraudulent. Lyne v. Bank of Ky., 5 J. J. Marsh. 545; Constantine v. Twelves, 29 Ala. 607

Where one takes a voluntary absolute conveyance of valuable property, knowing that the grantor is largely in debt, and unable to pay his debts without subjecting such property to their payment, he is guilty of fraud in law against the creditors of his grantor, and the conveyance is void as against them. First Nat. Bank v. Bertschy, 9 N. W. Rep. 534.

5. EXEMPT PROPERTY. The conveyance of a homestead already exempt from execution—that is, beyond the reach of legal process—cannot be fraudulent, (Lishy v. Perry, 6 Bush, 515; Smith v. Rumsey, 33 Mich. 183; Delashmut v. Trau, 44 Iowa, 613; Carhart v. Harshaw, 45 Wis. 340;) for the conveyance of property exempt from execution cannot, under any circumstances, be made out to be a fraudulent conveyance, (Bond v. Seymour, 1 Chand. 40;) and consequently a conveyance of a homestead to the wife will be upheld. Dreutzer v. Bell, 11 Wis. 114; Pike v. Miles, 23 Wis. 164; Legro v. Lord, 10 Me. 161; Hibben v. Soyer, 33 Wis. 319.

Exempt property is not subject to fraudulent alienation, (Derby v. Weyrich, 8 Neb. 174; Boggs v. Thompson, 14 N. W. Rep. 393; Robb v. Brewer, 15 N. W. Rep. 420; Gillespie v. Brown, 20 N. W. Rep. 632,) unless made with the intention of perpetrating a fraud upon the exemption laws. Allen v. Perry, 14 N. W. Rep. 3; Mull v. Jones, 5 Pac. Rep. 388.

6. CONSIDERATION. To sustain a deed of bargain and sale requires a pecuniary or valuable consideration. 3 Washb. Real. Prop. (3d Ed.) 321. To sustain a deed of covenant and seizin requires a good consideration. Id. "A valuable consideration means and necessarily requires, under every form and kind of purchase, something of actual value, capable, in estimation of law, of pecuniary measurement, parting with money or money's worth, or an actual change in the purchaser's legal position for the worse." 2 Pom. Eq. Jur. 205. Where the amount of consideration is grossly small or inadequate, it is not a valuable consideration. Worthy v. Caddell, 76 N. C. 82. In the last case the court say that "when a person causes his land to be sold on execution to defraud his creditors, and B., with knowledge of such intent, purchases at a grossly inadequate price, he is not a *bona fide* purchaser for a valuable consideration. A consideration named in a deed being merely nominal, the deed, as to creditors of the grantor, will be taken by the court to be voluntary." De Tastett v. Crousillat, 2 Wash. C. C. 133. See Brice v. Myers, 5 Ohio, 121. A conveyance made on a good consideration only is a voluntary conveyance. 3 Washb. Real Prop. (3d Ed.) 320. To bring a conveyance within the category of a voluntary conveyance, there must be a total want of any substantial consideration. Id.

Where the circumstances exist upon which a consideration of love and affection can be based,—as relationship within the proper degree,—and love and affection, coupled with one dollar, is the consideration for the transfer, the latter being grossly inadequate as a money consideration, the former will be regarded as the true consideration, and the only consideration. If one consideration, like money, be expressed, another, like love and affection, may not be shown, and *vice versa.* Burrage's Lessee v. Beardsley, 16 Ohio, 438; Hinde's Lessee v. Longworth, 11 Wheat. 213; Clarkson v. Hanway, 2 P. Wms. 203; Hildreth v. Sands, 2 Johns. Ch. 43; 3 Washb. Real Prop. (3d Ed.) 616. Where a deed purports to be for natural love and affection, it is not competent to prove that the consideration was valuable. Hinde's Lessee v. Longworth, 11 Wheat. 199. It has been held that mere moral obligations to convey are sufficient to sustain conveyance. Cottrell v. Smith, 18 N. W. Rep. 865.

*St. Paul, Minn.*                                                                                      JAS. M. KERR.